## A. THOUVENIN V. MARIANO RODRIGUES AND OTHERS.

There must be an acceptance of a donation, to render it complete and effectual to pass the title.

But the possession, by the donee, of the written instrument by which it is made, and a subsequent claim of the land, is sufficient evidence of his acceptance of it.

The court incline to the opinion, without now making a final decision, that by the law governing a donation made in 1833, the father and son were not so far regarded as one and the same person, that the one could not contract with, or receive a donation from, the other.

A judgment, foreign or domestic, which is void for want of jurisdiction, cannot be evidence of any right acquired under it, whether it come in question collaterally, or in a direct proceeding.

The doctrine of international law, as applied to foreign judgments, is, that they must be founded either upon personal service on the defendant, or upon his property.

But a domestic judgment, or constructive service, authorized by law, is valid.

Articles 96 and 98 of Decree 277 of the laws of Coahuila and Texas, authorizing constructive service, and the appointment of curators, &c., for absent defendants, was in force until abolished by the repealing statute of the 20th of January, 1840.

If a statute give a new remedy, not repugnant to, or inconsistent with, the old one, the latter is not taken away, but parties have their election between the two. Repeals by implication are not favored.

Remedies which the courts, at the time, recognised as existing, and under which rights of property have been held and transmitted, ought not, by construction, to be held to have been abolished, so as to defeat such rights.

Different principles govern in respect to judgments, when brought in question in a collateral proceeding, and on review in an appellate tribunal; in the latter case, they may be erroneous for want of personal service; though not void in the former.

A judgment against a defendant, in 1839, served by leaving a copy of the writ and petition at his residence, and posting a copy of the writ on the door of the clerk's office, and who was represented by a curator appointed by the court for that purpose, is not, upon its face, void for want of jurisdiction.

A judgment cannot be impeached in a collateral proceeding, by proof of the death of the plaintiff, before the suit was instituted.

But such fact is a circumstance that may conduce to the proof of fraud in obtaining the judgment, and is admissible for this purpose, when fraud is alleged.

APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

This was an action of trespass to try title, brought by Mariano Rodrigues, in his own right, and as guardian of Manuel Yturio Castillo and Vincenta Iturio Castillo, minor heirs of Maria Josefa Rodrigues, and Carlos Sandoval and Fernando Sandoval, against A. Thouvenin, William H. Dangerfield, and John Laplace, for five and one-half leagues of land, which formerly belonged to Jose Maria Rodrigues, the son of Mariano Rodrigues, and the uncle of the other plaintiffs, who, they alleged, died intestate in the year 1850; and that they owned the land by inheritance, as well as by purchase and donation, from said Jose Maria Rodrigues, during his life-time.

The plaintiffs further alleged, that the defendants pretended to hold, and claimed the land, by virtue of a sale by the sheriff of Bexar county, under a judgment in favor of John Cortez against Mariano Rodrigues; but they averred that the same was null and void; that no such judgment was ever rendered; and if rendered, it was null and void, the said Mariano Rodrigues never having been cited, as required by law, and the plaintiff therein having been dead many years before the institution of the suit, and there being no legal obligation in existence. And if the said judgment was valid, which they denied, the proceedings under the same were illegal and void: the execution never having been legally issued, and there having been no legal sale or advertisement of the property, and no consideration or price paid; that the whole was a collusion of the said Dangerfield and others to obtain possession of the land. Prayer that the defendants might be compelled to file in court their title-deeds for cancellation; and that the said judgment and sheriff's sale might be declared fraudulent, null and void; and that the legal portion to which they were entitled by inheritance, or by purchase or donation from the said Jose Maria Rodrigues, might be decreed to them; or in case the legal title should be found in one of them, that he might be declared the owner.

On the trial of the cause, the defendants offered to read in evidence to the jury, an instrument of writing, (the execution of

it being admitted by the plaintiffs,) purporting to be a donation of the land in controversy, from Jose Maria Rodrigues to his father, Mariano Rodrigues, dated March 15th, 1833. To the reading of this paper the plaintiffs objected, (the grounds of objection were not stated in the bill of exceptions;) but the court overruled the objection, and permitted the said instrument to be read, to which the plaintiffs excepted.

The defendants then proved, that previous to the date of the said donation, the plaintiff, Mariano Rodrigues, tried to sell the land in controversy, but did not obtain a sufficient price, and did not sell; that after he received the donation, he made no effort to sell, but claimed the land as his own; and the witness saw the donation afterwards in his trunk, among other papers.

The defendants then offered to read a copy of a judgment, rendered in the District Court of Bexar county, at its April Term, 1839, in favor of John Cortes against Mariano Rodrigues, for $1727.62 principal, and $825.92 interest; to the reading of which the plaintiffs objected, the court sustained the objection, and the defendants excepted. The grounds of objection were not stated in the bill of exception, but it appeared from the copy of the record, which was set out, that the said Cortes prayed that Rodrigues might be summoned to answer his said petition, and in case he should not be found in the said county, that a curator should be appointed by the court, to appear and represent him. The sheriff's return was, that he had executed the writ, by leaving a copy of it and the petition, at the residence of the said Mariano Rodrigues, and by posting a copy of the writ on the door of the clerk's office; whereupon, the court appointed an attorney of the court curator *ad litem* for the said defendant. The plaintiff and curator then appeared, waived a jury, and submitted the cause to the judge, who gave judgment in favor of the plaintiff.

There was a verdict in favor of the plaintiff, Mariano Rodrigues, whereupon, the court gave judgment in his favor, for the land in controversy; and that the deeds of the defendant, Thou-

venin, who alone it appeared, made defence, should be cancelled; whereupon Thouvenin gave notice of an appeal.

*S. G. Newton,* for the appellant.

*J. A. & George W. Paschal,* and *Superville,* for the appellees.—We lay it down as a well established principle of the civil as well as common law, that a judgment, without citation of parties in some of the modes prescribed by law, is a nullity, and all the proceedings had thereon, are null and void.

The civil law declares, that the citation can in no manner be omitted, because, then, the judgment would be null. (Elements of Spanish Law, 259; 1 Martin, N. S. 1; McMicken v. Smith and wife, 5 Id. 482; Abot v. Holmes, 8 Id. 145; Gower v. Hinken, 17 La. Rep. 42; Dixon v. Kinnard and Shields, 17 Id. 468; Collins v. Balteson, 3 Id. 245; Story's Conflict of Laws, § 586; McCoy v. Crawford, 9 Texas Rep. 354; McIlhany v. Secrest, Dallam, 538; 3 United States Cond. Rep. 319; 9 How. Rep. 350; 15 Johns. Rep. 142; 1 Hill, Rep. 139, 141; 1 Barb. Rep. 289; 2 B. Monroe, 455; 11 New Hamp. Rep. 191.) The last seven authorities were quoted, and fully sustained the judgment of this court in the case of McCoy v. Crawford. There can be no doubt, with regard to this position, that where the citation upon the party is not in conformity to the law of the forum, the court has no jurisdiction.

Was the citation of Rodrigues in this case, such as the law in force at the time, required? The proceeding was not *in rem,* but in person, and against the defendant for a money demand. We think this court has fully settled the question, by a series of adjudications, which cannot be got over. We think the point was fully settled by the Supreme Court, in the cases of Maiden v. Farris, Brown and Calder, as early as 1843. (See Dallam, 535.) The court in that case decided, that service by leaving a copy of the citation and petition at the house of the defendant, on the 26th day of February, 1839, was not sufficient, where he did not appear, nor answer. The court also said, by reference to the

act organising the jurisdiction and powers of the District Court of December, 1836, that *personal service of all process was required to be made on the defendant*, and that this law was not changed or modified, until February 5th, 1840. *That the want of service was fatal.*

The case of McIlhany v. Secrest, is still more full. (Dallam, 538.) In that case, service was effected by publication, by order of the judge. At the close of the petition, it was stated that the defendant was a transient person; that his residence was not known; that ordinary citation might not reach him.

The court say, " our statute law nowhere authorizes or legalizes the service of process of any kind, than personal service, with the single exception of attachments," &c. That the Act of 1836, " *confined the service to the person.*" That after the repeal of the law of 1840, authorizing service to be made on a person over fourteen years of age, at the house of the defendant, "*the law now stands as it aforetime was.*" "*In ordinary cases,*" no authority was given to notify the party by publication. "*Averments* in the petition did not authorize the court to resort to a method of notification not provided for by law, and exceedingly questionable in any instance." These opinions were delivered by Judge MORRIS, and concurred in by the whole court. But the case of McCoy v. Crawford, before referred to, is conclusive of the case at bar. There the defendant relied upon a sale under a judgment, to which one Grigsley had been cited, August 22d, 1839, by *reading* the withih to him; and on the non-appearance of Grigsley, *a curator ad litem* was appointed to represent him, who *pleaded to the jurisdiction of the court;* this court held the judgment null and void. The court say: " The mode of obtaining personal service of process, in 1839, *was by delivering to him a copy of the writ and petition.* There was no legal service upon Grigsley. He had not legal notice of the writ, and consequently, the judgment was not binding on him. *No person is bound by any* judgment or decree, in which he has not become a party in *some of the modes known to the law.* His rights were in no way affected by the judgment, or by the proceedings under it.

The proceedings did not divest the title of the heirs of McCoy. These decisions, then, show that in 1839, the only mode of service upon a party, known to the laws of Texas, (except in cases of attachment, or extraordinary proceedings,) was, by delivering to the defendant a copy of the citation and petition, in accordance with the 8th section of the Act of December 22d, 1836, establishing and organizing the jurisdiction and powers of the District Court; and that any judgment, (and all the proceedings thereunder) rendered, without the defendant having been cited in some of the modes known to the law, was null, and did not affect the rights of the defendant. Upon these decisions we confidently plant ourselves. But it is said, the laws of Mexico, as to practice, were in force in 1839, and that the Act of Coahuila and Texas, of 1834, was also in force; that the latter act allowed a curator *ad litem* to be appointed to represent him. This law was superseded by the Act of 1836, which required, in all cases, a delivery of a copy of the petition and citation.

But admitting the service was proper, the judgment was still null. Under the Spanish law, even if the party were legally cited, no *valid* judgment could be rendered before the *contestatio litis* was formed, or *issue joined*. Should this be omitted, the judgment would be null, and no definitive sentence could be given, except in case of contumacy. (See Elements of Spanish Law, title XII., page 254, *De la Contestacion;* also the law authorities before cited.) If it were proper to appoint a curator, he should have been notified; and notice cannot be presumed where there was no *appearance*. (See Titles XI. and XII. of the Elements of Law, before referred to, of Citation and Contestation.) The same principles will be found translated in Johnston's Institutes of the Civil Law. (See Citation and Contestation, p. 309–312.)

HEMPHILL, C. J.—In this case our conclusions are, 1st. That Mariano Rodrigues, the defendant, in the suit against him by John Cortes, had such notice of the suit, as in contemplation of law gave the court jurisdiction over his person; and that the

judgment in that case is not a nullity, for the supposed want of notice to the defendant.

2d. We incline to the opinion, that the alleged donation from Jose Maria Rodrigues to his father, Mariano Rodrigues, was complete; but as the subject has not been thoroughly examined, and as the judgment will be reversed, we leave the point, as to the validity of the donation, without a positive or conclusive decision: and,

3d. We are of opinion that, under the pleadings charging that the judgment in the case of John Cortes v. Mariano Rodrigues, was null and void, on the ground of the death of the plaintiff before the institution of suit; and that the judgment, and all the proceedings under it, was but a collusion to obtain possession of the land; the testimony of the witness, offered to prove the death of the said John Cortes, before the commencement of the said suit, should have been received. An opinion will be prepared, showing more fully the reasons for our conclusions.

The judgment, so far as it shows a discontinuance as to Dangerfield, and that the demurrer was overruled, is affirmed. In all other respects it is wholly reversed, and the cause remanded for further proceedings.

Reversed and remanded.

*J. A. & George W. Paschal*, for the appellees, made application for a rehearing.

WHEELER, C. J.—The record presents the anomaly of a recovery by the plaintiff, upon evidence introduced by the defendant, to the admission of which the plaintiff objected at the trial, and which he now insists was incompetent to prove title in himself. Thus; the plaintiffs claimed title to the land in question, both by inheritance, and by purchase and donation from Jose Maria Rodrigues; they rested their case upon the admission of title in him by the defendants, and proof of his death, and their heirship.

Upon this evidence alone, the plaintiff, Mariano, the father, if the only surviving parent, would have been entitled to one half, and the other plaintiffs, children of the sisters of the deceased Jose Maria, to the remaining half of his estate, by inheritance. (O. & W. Dig., Art. 345.) It does not appear whether the mother of Jose Maria survived him. But whether she died before or after the descent cast, the father would not inherit the whole estate. (Id. 347.) But by the verdict and judgment, he recovered the whole, to the exclusion of his co-plaintiffs.

This can only be accounted for, upon the ground that the court and jury considered that the donation by the son to the father, of the 15th of March, 1833, was complete; divesting the former of the property in his lifetime, and vesting it in the latter. The recovery must have been upon the title acquired by the plaintiff, Mariano, by this donation. The plaintiffs had averred title by donation, but they had not introduced the evidence of it; and when the instrument constituting the evidence was offered by the defendant, they objected to its admission, and reserved their objection by a bill of exceptions. They now insist that the donation was incomplete, and did not convey the title to the plaintiff, Mariano.

Thus it is seen, that the plaintiff, Mariano, as we have said, has recovered upon evidence introduced by the defendant, against his objections, and which, his counsel insist, conferred on him no title. If we were of the same opinion, it would require a reversal of the judgment; but we incline to a different opinion. We do not think the father and son are so far regarded as one and the same person, by the law governing this donation, that the one could not contract with, or receive a donation from, the other. We do not doubt that there must be an acceptance of the donation, to render it complete and effectual to pass the title; but we think the evidence shows such acceptance. It appears that the plaintiff, Mariano, had the writing in his possession, and that he afterwards claimed the land as his own. In his petition in this case, he asserts his title to it by donation.

It would seem, therefore, that the evidence of his acceptance of the donation, is not wanting; and that the donation was complete, unless wanting in some other essential formality or solemnity, in order to its complete execution. Without intending, at present, a final decision upon this point, (as it is unnecessary to the present disposition of the case,) we incline to the opinion, formerly expressed, that the donation was complete.

Though we might not see cause to reverse the judgment, on account of the supposed invalidity of the donation, and consequent failure of title in the plaintiff, to support the verdict and judgment in his favor, there is another ground upon which, we are of opinion, the judgment must be reversed; that is, the ruling out of the record of the judgment in the case of Cortes v. Rodrigues, under which the defendant claims to have acquired the title to the land in question. This ruling is supposed to have proceeded upon the ground, that the court had not jurisdiction to render the judgment in question, for the want of service upon the defendant, and that the judgment was consequently void.

That a judgment pronounced by a court not having jurisdiction is void, and cannot be evidence of any right acquired under it, is an acknowledged doctrine, as well in respect to domestic as to foreign judgments, and as well where the judgment comes in question collaterally, as where it is sought to be enforced directly, by action.

Numerous authorities are cited, on behalf of the appellee, to show that a judgment rendered without personal service, is void for want of jurisdiction. These, for the most part, are cases where the court had not acquired jurisdiction over the person of the defendant, according to the local law, or where judgments rendered in one country, were sought to be enforced in another, and where the question was considered in an international point of view. So considered, it is held, that jurisdiction, to be rightfully obtained, must be founded either upon the person of the defendant being within the territory of the sovereign where the court sits, or his property being within the territory; for otherwise there can be no sovereignty exercised. This, unquestiona-

bly, is the doctrine of international law, as applied to foreign judgments. How far it is modified by the Constitution and the act of congress, in its application to the judgments of the courts of a sister state, it is not necessary, in this case, to consider. (See on this subject, Note 59 to p. 59, 2 Cow. & H. Notes to 2 Phil. Ev.; Mills v. Duryee, 2 Am. Lead. Cases, 707, and cases cited in note; D'Arcy v. Ketchum, 11 Howard, 165.)

The present is not the case of a foreign judgment, sought to be enforced in this state, but a domestic judgment, brought collaterally in question, in the domestic forum. Whatever effect may be given to the judgments of one state, when sought to be enforced in the courts of another, however they may be regarded in the courts of the latter state, when rendered without personal service on the defendant, it is perfectly well settled, that if rendered upon constructive service, authorized by the laws of the state where rendered, they will be held to be as valid and binding by its courts, to the extent of their operation by the local law, as if rendered upon personal service on the defendant. It is competent for each state to prescribe the mode of bringing parties before its courts. Although its regulations in this respect can have no extra-territorial operation, they are, nevertheless, binding on its own citizens. For, in respect to its own resident citizens, it is undoubtedly competent for the legislature to prescribe such modes of judicial proceeding as it may deem proper, to direct the manner of serving process; the notice which shall be given to defendants; and to declare the effect of a judgment rendered in pursuance of such notice. (Note 59 to p. 59, 2 Phil. Ev.; Notes to Mills v. Duryee, 2 Am. Lead. Cases, 739 ; 6 Vermont, 591; 15 Wend. 374, 610, 613; 3 Monroe, 266 ; 11 Howard, 165, 173, 174; 6 Texas Rep. 275, 379.)

The question then is, was this judgment rendered upon service made in accordance with the local law, or the law in force here at the time of the service. It is not questioned that it was in accordance with Decree 277, Art. 96 and 98, of the Laws of Coahuila and Texas. (Laws and Decrees, p. 265.) But it is insisted, that these provisions had been repealed, not expressly,

but by implication, by the substitution of other provisions. The contrary opinion, however, has been constantly maintained by this court, in cases where this subject has come under examination. It has uniformly been held, that the law authorizing this mode of service, and the appointment of a curator, or guardian, or attorney *ad litem*, to represent an absent defendant, remained in force, until abolished by the general repealing statute of the 20th of January, 1840. (Hart. Dig., Art. 127, § 2; Sutherland v. De Leon, 1 Texas Rep. 250, 308; 9 Id. 25; 13 Id. 529; 21 Id. 154, 162.)

The Constitution of the Republic is explicit, that "all laws now in force in Texas, and not inconsistent with this Constitution, shall remain in full force until declared void, repealed, altered, or expire by their own limitation." (Schedule, § 1.) The provisions of law mainly relied on, as operating a repeal by implication, are the Act of the Provisional Government providing the remedy by attachment, as known to the Code of Practice of Louisiana, and the provision of the District Court Act of 1836, prescribing the mode of personal service. (Hart. Dig. 18, Art. 6; Laws of the Republic, vol. 1, p. 201, § 8.) The former simply empowered the judges of the provisional judiciary, thereafter to be appointed, to grant the writ, in the cases, and subject to the regulations prescribed by the Louisiana Code. It is not perceived that this provision respecting the granting of attachments, should be held to affect the existing remedy provided by law, for proceeding *in personam* against absentees, by constructive service. The remedy is merely cumulative. There is no repugnancy or inconsistency in the remedies, from which it can be inferred, that the giving of the one was intended to operate a repeal of the other. Where a statute merely gives a new remedy, without any negative expressed or implied, the old remedy is not taken away, and the party has his election between the two. (3 Hill, 41; Seymour v. Cooley, 9 La. Rep. 73, 78.) Repeals by implication are not favored.

The provision of the District Court Act of 1836, respecting service, only provides the manner of making personal service.

But this provision does not conflict with the existing law, providing for constructive service, where personal service could not be obtained; or imply a prohibition of such service, in such cases as were not provided for by the Act of 1836. The practice of the courts, as shown by numerous cases which have come under examination in this court, evidences, that it was not the understanding at the time, that these provisions operated a repeal of existing remedies, whatever may have been considered correct practice in cases subsequently brought under review upon appeal, or writ of error. Nor do we think they ought to be held to have such effect; especially, at this day, when, to give them the effect contended for, would be to cut down justly acquired rights of property, held and transmitted under the sanction of the prevailing practice of the District Courts, and the repeated decisions of this court. The cases cited from the decisions of the Supreme Court of the Republic, were cases decided upon appeal, where the question was, not whether the judgments under review were void for the want of jurisdiction, but whether they were erroneous. They were not cases where the judgments were brought collaterally in question. They might be authority for holding a judgment, rendered without personal service, where such service could have been obtained, erroneous; but they are no authority for holding a judgment rendered upon constructive notice, in a proper case, to be void, when brought collaterally in question. A judgment may be erroneous, without being void. Very different principles govern the action of courts, in respect to judgments thus brought in question in a collateral action, from those which govern a revising court upon appeal, or writ of error. (21 Texas Rep. 368; 11 Martin, La. Rep. 607, 608; 3 Monr. 266; 2 Am. Leading Cases, 733, *et seq.*)

The question here presented is, whether the judgment in question was, upon its face, void for the want of jurisdiction; and we are of opinion that it was not. Upon this question, the proviso contained in the 7th section of the Attachment Law of the 28th of January, 1839, (Laws of the Republic, vol. 3, p. 93,) cited by counsel for the appellee, is not applicable to the case,

because it does not appear by the record of the judgment, that the defendant therein was a non-resident; but, on the contrary, it is stated in the petition, that he is a citizen of San Antonio.

We are of opinion, that upon its face, the judgment was not void for the want of jurisdiction, and consequently that it was admissible in evidence. Whether it may be avoided by proof, that the defendant was a non-resident at the time of the institution of the suit; whether he should have instituted a proceeding to avoid the judgment, and within what time, are different questions. But they are questions which, in the present attitude of the case, and without argument, we do not think proper to decide. As the record of the judgment was excluded, the proposed evidence of the death of the plaintiff, Cortes, before the institution of the suit, was irrelevant. But, in reference to another trial, when the record may be introduced, it is proper to say, we are of opinion, that under the allegations of fraud in obtaining the judgment, the evidence is admissible. The alleged fraud is not very clearly and specifically pleaded; but as the petition was not demurred to on that ground, we think the allegations sufficient to admit the evidence. Where a judgment is thus brought collaterally in question, such evidence is not admissible, as, in itself, affording a substantive ground of impeaching and annulling the judgment. This point was decided in the case of Mills v. Alexander, 21 Texas Rep. 154; (and see also Weaver v. Shaw, 5 Id. 286.) If the judgment is sought to be avoided on such grounds, it must have been by a direct proceeding, in the tribunal which rendered the judgment, and not by evidence introduced in a collateral proceeding. (Dufour v. Camfranc, 11 Martin, La. Rep. 607; 1 White's Rec. 305, *et seq*.) But the fact of the death of the plaintiff before suit, may be a circumstance conducing to the proof of fraud practised in obtaining the judgment.

If the plaintiff should be successful upon another trial, in impeaching and avoiding the judgment, it may become a question, whether the defendant purchased with notice of the vice in the judgment, or whether he is entitled to the protection of an inno-

cent purchaser, or is to be re-imbursed the purchase-money. Upon these points it will suffice for the present, to refer to some adjudged cases. (Dufour v. Camfranc, 11 Martin, 607; Sydnor v. Roberts, 13 Texas Rep. 598; Barnes v. Hardeman, 15 Id. 368; Howard v. North, 5 Id. 290; Bailey v. White, 13 Id. 114.) The judgment is reversed and the cause remanded.

Reversed and remanded.