**Mark T. and Wendy COPPEDGE, Appellants,**

v.

**COLONIAL SAVINGS & LOAN ASSOCIATION, Appellee.**

No. 05–86–00039–CV.

Court of Appeals of Texas, Dallas.

Dec. 3, 1986.

Rehearing Denied Dec. 31, 1986.

Joseph G. Chumlea, Dallas, for appellants.

C. Victor Anderson, Jr., Carvan E. Adkins, Tim G. Sralla, Fort Worth, for appellee.

Before AKIN, DEVANY and HOWELL, JJ.

AKIN, Justice.

Mark and Wendy Coppedge appeal from a summary judgment granted against them on their claim against Colonial Savings & Loan Association to recover for usurious interest charged and received by Colonial. The Coppedges contend that the trial court erred in granting Colonial's motion for summary judgment and in overruling theirs because Colonial charged and received usurious interest from the Coppedges. Consequently, they argue that they are entitled to statutory penalties and attorney fees, as well as common-law damages, as a matter of law. We agree with the Coppedges that they were entitled to summary judgment on their claims for statutory usury penalties and remand the cause for determination of proper attorney's fees to be awarded them. We do not agree, however, that they are also entitled to common-law recovery for usury in addition to the statutory penalties. Consequently, we affirm the trial court's judgment as to their common-law cause of action.

The Coppedges borrowed money from Colonial in 1977 to purchase a home. The promissory note, secured by a deed of trust on the home, provided for interest at the rate of 9.375% per annum, payable in 359 monthly payments. The parties have stipulated to the following figures:

Total interest under note over
359–month term ................. $173,497.97
Maximum legal amount that could
have been contracted for, charged
or received under note for
359–month term (at 10%).......... 187,857.70
Actual period Coppedges had use of
the funds....................... 67 months
Total amount of interest received by
Colonial (excluding the $9,100.00
payment here in controversy)...... $45,592.77

Maximum legal amount of interest
that could have been received by
Colonial over the 67 months....... 48,749.00

During 1983, the Coppedges contracted to sell their house to a third party. The transaction called for the prepayment of the Coppedges' note payable to Colonial. The closing occurred on September 30, 1983. Colonial notified the title company handling the transaction to withhold from the sale proceeds the sum of $9,100 over and above the principal balance plus accrued interest. It appears that Colonial premised its claim to the $9,100 upon a contention that the Coppedges had violated the due-on-sale provision in the deed of trust that secured the note. When the Coppedges protested the withholding, the title company escrowed the $9,100.

On November 10, 1983, an attorney representing Colonial sent a letter to the Coppedges containing the following language:

You should consider this letter to be a demand letter for back interest in the amount of $9,100.00 plus attorneys' fees and court costs, if any. Please be advised that this demand letter is made in order to fulfill the statutory requirements for filing of a lawsuit if this matter is not resolved to our satisfaction.

At Colonial's request, the escrow agent delivered the $9,100 to Colonial. On November 18, 1983, the Coppedges' attorney wrote to Colonial's attorney demanding that Colonial cease charging the $9,100 additional interest and threatening to file suit if Colonial persisted. Eight months later, in July 1984, Colonial returned the $9,100 plus interest to the Coppedges. The Coppedges cashed the check and then filed this lawsuit.

The note in this case was, under the facts stipulated by the parties, not usurious. The Coppedges contend, however, that Colonial "charged and received" usurious interest when it demanded the additional sum of $9,100 as interest in September and November of 1983 and caused that amount to be delivered to Colonial from the escrow account at the title company. If the $9,100

was interest, and no exception contained in the usury statute applies, then Colonial received $5,943.77 in usurious interest (total amount of interest received for 67 months—$54,692.77—less maximum legal amount stipulated to by the parties—$48,749.00), and is subject to the penalties for usury permitted by law.

We first must determine whether the $9,100 was in fact interest. Interest is the compensation allowed by law for the use, forbearance, or detention of money. Tex.Rev.Civ.Stat.Ann. art. 5069-1.01(a) (Vernon 1971). Through its attorney, Colonial demanded $9,100 as "back interest" due as a result of the Coppedges' alleged breach of the due-on-sale clause in the deed of trust that secured their loan from Colonial. Although the label "back interest" is not controlling, see *Gonzales County Savings & Loan Association v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976), the factual basis for Colonial's claim to the $9,100 indicates that Colonial sought that sum as additional compensation for the Coppedges' use of its money. Moreover, the fact that the Coppedges repaid the loan before Colonial demanded and received the $9,100 does not change the nature of that sum as compensation demanded in connection with the original real estate loan. The fact that a loan has been repaid does not *ipso facto* preclude a lender from asserting a charge for delinquent, or "back," interest under that loan. We also reject Colonial's argument that the $9,100 charge was not interest to the extent that Colonial used a portion of it to pay its attorney's fees. Had Colonial's demand letter identified a part of the $9,100 as being for attorney's fees, a fact issue might have been raised. However, the letter unambiguously identified the entire sum as "back interest" and stated that an *additional* sum would be sought for "attorneys' fees and court costs, if any." Colonial's actual use of the $9,100 is irrelevant, and its belated attempt to show that part of the amount demanded was to pay attorney fees does not bring it within the "services rendered in connection with the loan" exception to the usury statutes. *See Nevels v. Harris*, 129 Tex. 190, 102

S.W.2d 1046, 1048 (1937). Thus, we hold that the $9,100 that Colonial demanded and received from the Coppedges constituted interest within the statutory definition. Further, according to the parties' fact stipulations, the $9,100 interest was usurious in the amount of $5,943.77.

Our next question is whether the actions of Colonial and its attorney violated the statutory proscription against charging or receiving usurious interest. Under article 5069-1.06, the term "charges" means the unilateral act of placing on an account an amount due as interest. *See Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260, 261 (Tex.1977). The unilateral act can be a debiting of an amount due or an act by the lender constituting a demand for payment, e.g., the inclusion of usurious interest in a statement of indebtedness submitted to the debtor. *Concrete Construction Supply, Inc. v. M.F.C., Inc.*, 636 S.W.2d 475, 477 n. 1 (Tex.App.—Dallas 1982, no writ). Thus, the demand letter sent by Colonial's attorney constituted a "charge" of interest by Colonial. *See Mecey v. Seggern*, 596 S.W.2d 924, 927 (Tex. Civ.App.—Austin 1980, writ ref'd n.r.e.). Further, Colonial "received" usurious interest when it collected the $9,100 from the parties' escrow agent. Accordingly, we conclude that Colonial violated article 5069-1.06 by both charging and receiving usurious interest from the Coppedges.

Nevertheless, Colonial seeks protection from the statutory penalties under the first sentence of article 5069-1.07(a), which codifies the spreading doctrine set forth in *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937). *See Tanner Development Co. v. Ferguson*, 561 S.W.2d 777, 786 (Tex. 1977); *see also Conte v. Greater Houston Bank*, 641 S.W.2d 411, 415 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Article 5069-1.07(a) provides as follows:

(a) On any loan or agreement to loan secured or to be secured, in whole or in part, by a lien, mortgage, security interest, or other interest in or with respect to any interest in real property, determina-

tion of the rate of interest for the purpose of determining whether the loan is usurious under all applicable Texas laws shall be made by amortizing, prorating, allocating, and spreading, in equal parts during the period of the full stated term of the loan, all interest at any time contracted for, charged, or received from the borrower in connection with the loan. However, in the event the loan is paid in full by the borrower prior to the end of the full stated term of the loan and the interest received for the actual period of the existence of the loan exceeds the maximum lawful rate, *the lender* contracting for, charging, or receiving all such interest *shall refund to the borrower the amount of the excess or shall credit the amount of the excess against amounts owing under the loan and shall not be subject to any of the penalties provided by law for contracting for, charging, or receiving interest in excess of the maximum lawful rate.*

Tex.Rev.Civ.Stat.Ann. art. 5069–1.07(a) (Vernon Supp.1986) (emphasis added). By enacting article 5069–1.07(a), the legislature adopted the spreading doctrine with respect to loans secured by a lien on any interest in real property. Thus, it applies in this action. The doctrine spreads "all interest at any time contracted for, charged, or received" in connection with the loan over the contractual term of the loan for the purpose of determining whether it is usurious. Tex.Rev.Civ.Stat.Ann. art. 509–1.07(a) (Vernon Supp.1986).

The stated term of Colonial's loan to the Coppedges was 359 months. When the total amount of interest contracted for, charged, or received by Colonial, including the $9,100 in dispute, is spread over the 359–month period, the transaction is not usurious under the first sentence of article 5069–1.07(a). However, the Coppedges repaid the loan to Colonial in full prior to the end of the full stated term of 359 months. Thus, Colonial was required to comply with the second sentence of article 5069–1.07(a) to avoid the statutory penalties.

The second sentence of article 5069–1.-07(a) provides that when the borrower pays the loan in full prior to the end of the stated term and the interest received for the actual period of the loan's existence exceeds the legal maximum, the lender must refund the excess to the borrower or credit the excess against the principal owed under the loan. *Id.* This provision limits the redemptive effect of the spreading doctrine when the borrower actually uses the loan for a shorter period than that stated in the contract. When prepayment is made, the interest received is spread over the term during which the borrower actually had use of the funds; the lender must refund or credit any excess interest to the borrower to avoid the statutory penalties.

The Coppedges repaid the loan after 67 months' actual use. The parties stipulated that the maximum legal amount of interest that Colonial could have received over the 67 months was $48,749.00. The total amount of interest that Colonial received, including the $9,100 "back interest," exceeded the legal maximum by $5,943.77. However, Colonial argues that because it "refund[ed] ... the excess," as the statute requires, it is not subject to the statutory penalties for charging and receiving usurious interest. We disagree.

■ The cardinal rule of statutory construction is to ascertain the legislature's intent and to give effect to that intent. *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982). A reviewing court is not limited to the literal meaning of the words used, but must consider that which is implied as well as that which is express. *McCulloch v. Fox & Jacobs, Inc.,* 696 S.W.2d 918, 921 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). As stated above, the second sentence of article 5069–1.07(a) was designed to restrict the spreading doctrine's application in cases where the borrower repays the loan prior to the end of the full stated term. In that event, the amount of interest received in connection with the loan is spread over the period of the loan's actual existence to determine whether it exceeds the legal maximum.

The lender may avoid usury penalties if it refunds or credits any usurious amount. The statute implies that the "refund or credit" provision applies only to interest that would otherwise be usurious solely as a result of the borrower's prepayment. The provision was designed to permit lenders to avoid the penalties only when they inadvertently have received usurious interest as a result of the borrower's actions in prepaying an otherwise non-usurious loan. It is inconceivable that the legislature intended that the "refund or credit" provision be used by lenders as a bootstrap to escape the statutory penalties whenever their own unilateral actions cause them to receive usurious interest.

Here, Colonial's receipt of usurious interest did not result from the Coppedges' prepayment; it arose solely from Colonial's unilateral actions taken *after* the Coppedges prepaid the loan, viz., the charging and receipt of the $9,100. Thus, we hold that the "refund or credit" provision of article 5069–1.07(a) is inapplicable as a matter of law and that Colonial is subject to the statutory penalties for charging and receiving usurious interest.

■ Under article 5069–1.06, the Coppedges are entitled to receive from Colonial "three times the amount of usurious interest contracted for, charged, or received ... and reasonable attorney fees...." Tex. Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon Supp.1986). Colonial charged and received $5,943.77 in usurious interest. The Coppedges are entitled to recover three times that amount, or $17,831.31, plus reasonable attorney's fees, under article 5069–1.06.

Finally, the Coppedges argue that, in addition to their statutory remedy, they are entitled to recover damages under the common-law action for usury. They further contend that the common-law theory permits their recovery of all the interest that they paid Colonial, including the interest paid within the legal maximum. We disagree.

■ Initially, we note that when the legislature creates a cause of action and a remedy for its enforcement, that legislation is regarded as cumulative of the common-law cause of action and remedy, unless the statute expressly or impliedly negatives the latter. *Juneman v. Franklin,* 67 Tex. 411, 3 S.W. 562, 563 (1887). Repeal of the common-law action and remedy by implication is disfavored and requires a clear repugnance between the common-law and statutory causes of action. *Thouvenin v. Rodrigues,* 24 Tex. 468, 479 (1859). The common-law action to recover usurious interest paid was established in Texas in *Bexar Building & Loan Association v. Robinson,* 78 Tex. 163, 14 S.W. 227 (1890). Although the legislature subsequently established a statutory scheme providing for the recovery of usurious interest contracted for, charged, or received, the legislature neither expressly declared nor necessarily implied an intention to abrogate the common-law remedy. We conclude that the statutory action for usury did not repeal the common-law action established in *Robinson.* Accord *Commercial Credit Equipment Corp. v. West,* 677 S.W.2d 669, 679 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

■ However, the common-law action will not afford the Coppedges any relief beyond that which they have been granted under article 5069–1.06. Under the common law, a debtor who has paid usurious interest can recover the amount by which the interest paid exceeds the legal maximum, but not the amount of interest paid within the legal rate. *Thompson v. Kansas City Life Insurance Co.,* 102 S.W.2d 285, 286 (Tex.Civ.App.—Waco 1937, writ ref'd). Article 5069–1.06 permits recovery of three times the amount by which the total interest contracted for, charged, or received exceeds the legal maximum, i.e., three times the amount permitted by the common law. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon Supp.1986). These two remedies are independent, and we disagree with *West* to the extent that *West* requires the common-law remedy to "be viewed in light of the present provisions of article 5069–1.06." *See West,* 677 S.W.2d at 680.

Although the usury statutes did not repeal the common-law action, we hold that the Coppedges are not entitled to recover damages under both theories. It is well-established that an aggrieved party is entitled to only one recovery for the same loss, even when alternative remedies exist. *Vick v. George*, 671 S.W.2d 541, 551 (Tex. App.—San Antonio 1983), *rev'd on other grounds*, 686 S.W.2d 99 (Tex.1984). The damages that the Coppedges have sought under alternative causes of action are the result of one loss, viz., the usurious interest charged and received by Colonial. Thus, they are entitled to satisfaction under either the common law or article 5069–1.06, but not both.

Accordingly, we affirm the judgment of the trial court to the extent that it rendered judgment against the Coppedges on their common-law cause of action for usury, but reverse and render as to their claim for statutory usury penalties in the sum of $17,831.31 (3 × $5,943.77), plus reasonable attorney's fees. Tex.R.Civ.P. 434. Because reasonable attorney's fees have not been determined, we remand this case to the trial court for determination of reasonable attorney's fees due the Coppedges under article 5069–1.06.

DEVANY, J., files a dissenting opinion.

DEVANY, Justice, dissenting.

I respectfully dissent.

Mark T. and Wendy Coppedge, appellants, borrowed $87,300 from Colonial Savings and Loan Association on or about December 21, 1977, secured by a deed of trust on their home. It is undisputed that the Coppedges made their mortgage payments timely. The loan was for 359 months at an interest rate of 9.375% to be repaid in installments of $727.21 each. They had had the use of the loan for 67 months at the time of the closing of their home resulting from a sale to third parties. They instructed the title company handling the closing to pay off the mortgage to Colonial in full. The record further indicates that during the life of the mortgage the Coppedges had made conveyances of their property to third parties in the form of contracts for deed without first securing the consent of Colonial, which Colonial claimed were in violation of the underlying deed of trust securing the Coppedge's mortgage note.

At the time of the closing, Colonial instructed the title company as to the amount owing to pay off the mortgage. In addition, Colonial instructed the title company to hold in escrow the sum of $9,100, which appears to be additional interest on the loan resulting from the violations of the contractual provisions in the deed of trust governing the transfers to third parties without securing the prior approval of Colonial. The title company set that sum aside in escrow in order to effect the closing. Shortly thereafter, Colonial sent a letter to the Coppedges asking for an *explanation* of the prior transfers in violation of the deed of trust. In that letter Colonial made demand for the $9,100 based upon those violations. The record does not indicate that the Coppedges responded to that letter. Some weeks later, Colonial secured the escrowed $9,100 from the title company. More than eight months after the closing, Colonial refunded the $9,100, together with interest thereon, to the Coppedges. Thereupon, the Coppedges filed suit against Colonial for usury. The parties filed cross motions for summary judgment. Summary judgment was granted to Colonial. I would affirm that judgment.

Important in the stipulations are the following facts:

The mortgage payments over the full 359 months would have resulted in total interest of $173,497.97 as compared with the maximum legal interest that could have been contracted for at the rate of 10% of $187,857.70. If we were to add the $9,100 to the $173,497.97, we would have a sum that was less than the maximum legal interest of $187,857.70.

Article 5069–1.07(a) provides as follows:

On any loan or agreement to loan secured or to be secured, in whole or in part, by a lien, mortgage, security inter-

est, or other interest in or with respect to any interest in real property, determination of the rate of interest for the purpose of determining whether the loan is usurious under all applicable Texas laws shall be made by amortizing, prorating, allocating, and spreading, in equal parts during the period of the full stated term of the loan, all interest at any time contracted for, charged, or received from the borrower in connection with the loan. However, in the event the loan is paid in full by the borrower prior to the end of the full stated term of the loan and the interest received for the actual period of the existence of the loan exceeds the maximum lawful rate, *the lender contracting for, charging, or receiving all such interest shall refund to the borrower the amount of the excess* or shall credit the amount of the excess against amounts owing under the loan *and shall not be subject to any of the penalties provided by law for contracting for, charging, or receiving interest in excess of the maximum lawful rate.*

TEX.REV.CIV.STAT.ANN. art. 5069–1.-07(a) (Vernon Supp.1986) (emphasis added).

It is further stipulated by the parties that the 67 months of the existence of the loan was subject to a maximum interest charge of $48,749.00, whereas the actual interest paid, before the collection of the $9,100 by Colonial, was $45,592.77. Therefore, if the additional $9,100 is classified as interest, it resulted in total interest which exceeded the lawful rate by $5,943.77. Accordingly, under the above quoted language of the statute, Colonial was obligated to refund $5,943.77 to the Coppedges to avoid the penalties of the law for usury. However, instead, Colonial refunded the entire $9,100 plus interest on that sum for the number of months it held the $9,100. Applying the test in the statute for determining whether the loan was usurious, I would hold that the loan was not usurious, and that Colonial's failure to timely refund the $9,100 to the Coppedges did not make it so. Article 5069–1.07(a) does not condition the determination of usury on prompt repayment of the excess in the event of pre-payment. On the contrary, the language that the "lender ... shall refund" the excess to the borrower and "shall not be" subjected to usury penalties in the event of prepayment does not indicate that the former requirement is a condition precedent to the latter.

In a recent opinion of this court, we stated:

> Moore and Caravan seek to enforce the penal provisions of the statute; we must, therefore, consider the statute as penal for the purpose of construing it. *Board of Insurance Commissioners v. Great Southern Life Insurance Co.*, 150 Tex. 258, 239 S.W.2d 803, 809 (1951). In Texas, a penal statute must be strictly construed against imposing the penalty. *Agey v. American Liberty Pipe Line Co.*, 141 Tex. 379, 172 S.W.2d 972, 974 (1943). A statute which provides penalties for excessive interest rates should be construed in such a way as to give the lender "the benefit of the legislative doubt against imposing the penalties imposed by the statute." *PJM, Inc. v. Walter Clark Advertising, Inc.*, 624 S.W.2d 282, 286 (Tex.App.—Dallas 1981, writ ref'd n.r.e.).

*Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 470 (Tex.App.—Dallas 1986, no writ).

I am of the opinion that the majority lays some stress on the fact that Colonial did not make the refund for eight months. If this time period were unreasonable, such unreasonable delay in making the refund does not change the test mandated by the statute which clearly establishes that the loan was not usurious. Indeed, if the refund had been made within only four months, would this have changed the result reached by the majority? I suspect that if the refund had been forthcoming within a few weeks the majority would have reached a different result. If unreasonableness troubles the majority, I direct their attention to the fact that the Coppedges were refunded an amount that was $3,156.23 more than was required by the above quoted statute and they received in-

terest on the entire $9,100 refund. Colonial has been generous with the Coppedges in correcting the error. Some consideration must be given to the failure of the Coppedges to furnish the requested explanation about the transfers in violation of the deed of trust. I further note that the Coppedges waited until they had received the inflated refund and interest thereon before filing their law suit. I have a question as to whether they lay behind the log by not giving the requested explanations. We do not have a typical usury case before us. A mortgage was paid in full. There was no principal left. The mortgage company mistakenly directed the title company to hold back $9,100. However incorrect this might have been, to impose the penalty advocated by the majority is not within the purview of the legislature. *Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 470.

One further observation should be made. The loan was paid in full at the time of closing. The amount of $9,100 was held in escrow by the title company because of alleged prior deed of trust violations and was not paid to Colonial for some time after that. Since Colonial apparently determined that the sum of $9,100 was erroneously withheld from the proceeds and should have been paid to the Coppedges, one could say that the amount withheld was not in fact interest. Of course, if it was not interest, the usury statute would not apply to it. This theory can be supported by the fact that the $9,100 was not for the use of money loaned, since the loan no longer existed. The majority treats the $9,100 as usurious interest, but on what principal? If it is interest on the original real estate loan, then it must be treated under article 5069-1.07(a) and the test applied. If it is not a payment for the use of money, since the majority concedes the loan was paid at closing, then it is not interest and, therefore, under either theory it cannot be called usurious interest. Regardless of what theory we use, the penalty imposed by the majority is a punishment that is unrealistic in a complex world of commerce where an error is made and corrected. If one takes advantage of a borrower and exacts a usurious rate of interest, the legislature clearly intended to put a stop to that practice. But where the rate of interest is legally correct and the loan paid off, but an error is made at closing and then corrected, the legislature, in my opinion never intended to give a windfall as advocated by the majority to one who sits back and contributes to the error.

I would affirm the judgment of the trial court.