**McKENNA INVESTMENTS, Gordon J. McKenna and Wife, Jan McKenna, Appellants,**

v.

**ATLAS ENERGY CORPORATION, Appellee.**

No. 2–91–098–CV.

Court of Appeals of Texas, Fort Worth.

June 2, 1992.

Rehearing Overruled July 1, 1992.

Shannon, Gracey, Ratliff & Miller, L.L.P., John Hill Cayce, Jr. and Kenneth L. McAlister, Fort Worth, for appellants.

Lippe & Associates, Emil Lippe, Jr., P.C. and Jeffrey R. Perry, Dallas, for appellee.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

MEYERS, Justice.

Appellants, McKenna Investments, Gordon J. McKenna and his wife, Jan McKenna, appeal from a take-nothing judgment in favor of Atlas Energy Corporation. The McKennas sued Atlas for usury, wrongful foreclosure, and breach of contract arising out of a nonrecourse "wraparound" mortgage on certain real property in Tarrant County, Texas. Atlas counterclaimed for declaratory relief requesting the trial court declare that Atlas had not breached the provisions of the wraparound mortgage agreements. In addition, Atlas sought the recovery of rent monies collected by the McKennas. In the trial court's findings of fact and conclusions of law, it held that the foreclosure of the property was valid, effective, and lawful, that Atlas recover $1,435.75 plus interest for the rent monies, and rendered a take-nothing judgment against the McKennas.

We affirm.

In March of 1984, Atlas sold certain real property and improvements located in Hurst, Texas, to Liberty Properties. The structure of the transaction between Atlas and Liberty was that of a "wraparound" mortgage, whereby Atlas was to receive a payment from Liberty equal to the payments for principal, interest, and escrow correctly charged by the underlying noteholders. In addition, Liberty was to pay Atlas a "spread" (or profit) of $1,781.20 per month.

In August of 1984, the McKennas purchased the property from Liberty and assumed all of Liberty's rights and obligations under the wraparound mortgage with Atlas. Under the Mortgage Wrap Documents, if the amount of escrow was to be escalated by either or both of the underlying mortgage companies, the McKennas agreed to increase the monthly payments to cover the increases. In April of 1985, Atlas sent a letter to the McKennas informing them of an escrow increase of over $1,900.00 per month and stating that more than $7,700.00 in escrow money was past due from the first four months of 1985.

The escrow increases were not paid by Atlas or the McKennas and as a result, in August of 1987, First Texas declared its note in default and gave Atlas notice of its intent to accelerate the note. The McKennas paid the default "under protest." The McKennas refused to pay any additional escrow increases. Atlas then gave notice of its intent to accelerate the wraparound notes.

In December of 1987, the McKennas filed this lawsuit and obtained a temporary restraining order to prevent the foreclosure sale of the property securing the wraparound notes. During the next two years the McKennas and Atlas entered into two agreed orders which stated that the McKennas would make timely payments to avoid foreclosure. In July and August of 1989, the McKennas made late payments to Atlas. Atlas subsequently reposted the property for foreclosure and conducted a foreclosure sale. A month later, Atlas sent a letter to the McKennas demanding "the immediate payment of the sum of $353,847.09, plus all rental payments previously collected from tenants for the month of September, 1989, and all property removed

from the premises at 1050 and 1060 Pipeline Road, or payment of the value thereof."

In their first point of error, the McKennas assert that Atlas's demand letter constitutes a charge of usurious interest. TEX. REV.CIV.STAT.ANN. art. 5069–1.01(d) (Vernon 1987). Specifically, they argue that the trial court's finding that the letter was not a demand for interest was legally and factually insufficient.

■ We will first consider if the McKennas established as a matter of law that the letter was a demand letter for a usurious amount of interest. If an appellant is attacking the legal sufficiency of an adverse finding to a special issue on which he had the burden of proof, the Supreme Court of Texas has stated that the appellant must, as a matter of law, overcome two hurdles. *See Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the fact-finder's answer, then secondly, the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.*

We must examine the record for evidence which supports the trial court's finding that the demand letter was not a demand for interest. The letter states in pertinent part:

Pursuant to the trustee's sale, a large deficiency remains due and owing, in the amount of $353,847.09, constituting the unpaid principal and accrued interest as of September 5, 1989, plus interest which has accrued pursuant to law since that date, and the trustee's fees and expenses.

. . . .

DEMAND IS HEREBY MADE for the immediate payment of the sum of $353,-847.09, plus all rental payments previously collected from tenants for the month of September, 1989, and all property removed from the premises at 1050 and 1060 Pipeline Road, or payment of the value thereof.

The letter states that the amount of $353,847.09, is for unpaid principal and interest, not just interest. Four days prior to sending the letter, Atlas filed an amended counterclaim requesting an offset against any recovery by plaintiffs by the amount of deficiency remaining on the promissory notes after the trustee's sale. Atlas's counterclaim was requesting recovery for the deficiency, not an offset for back interest due. Thus, there is some evidence in the record to support the court's finding that the demand for payment was not a demand for interest still due, but for the deficiency remaining after the foreclosure sale. The McKennas have not overcome the first hurdle of the *Holley* test; we find there was some evidence to support the trial court's finding they did not establish that Atlas committed usury as a matter of law. *See Holley*, 629 S.W.2d at 696.

■ Secondly, we will consider the McKennas' assertion that the evidence was factually insufficient to support the trial court's finding that the letter did not demand interest. In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

■ The McKennas state that there is evidence to support their assertion that the demand for $353,847.09 was a usurious amount of interest charged for the debt previously owed by the McKennas. They argue that the McKennas' personal liability

under the loan had been discharged prior to the $353,847.09 demand, thus the entire amount requested by Atlas must be for interest. However, the Mortgage and Security Agreements do not limit remedies of default to the proceeds of the foreclosure. As has already been stated above, the demand letter stated that the demand was for unpaid principal and interest. Furthermore, there was evidence that Atlas was seeking an offset against any recovery by plaintiffs for the amount of the deficiency remaining on the promissory notes after the trustee's sale. The McKennas argue that *Coppedge v. Colonial Sav. & Loan Ass'n* is dispositive in this case. *Coppedge v. Colonial Sav. & Loan Ass'n,* 721 S.W.2d 933 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). In *Coppedge,* the creditor demanded "back interest" in the amount of $9,100.00 after the Coppedges had paid the loan in full. The court found that the fact that the loan had been repaid did not preclude the lender from asserting a charge for back interest under the loan. *Id.* at 936. However, because the letter unambiguously identified the entire sum as "back interest," the court found the charge was usurious. *Id.* The McKennas assert this case is indistinguishable because the notes provided that in the event of default satisfaction was limited to foreclosure, and that the subsequent demand letter was a demand for interest as a matter of law.

As already discussed in the facts under this point the evidence showed that the Mortgage and Security Agreements did not limit satisfaction to foreclosure. And further, the demand letter stated that it was for unpaid principal and interest, not back interest.

After viewing all the evidence, we do not find the trial court's finding that Atlas's demand letter was not demanding $353,847.09 in interest to be so against the great weight and preponderance of the evidence as to be manifestly unjust. The McKennas' first point of error is overruled.

In their second, third, and fourth points, the McKennas argue Atlas's foreclosure was in violation of the Mortgage and Security Agreements. They argue the Mortgage and Security Agreements do not permit Atlas to accelerate the indebtedness nor to foreclose on the property if arrears in payments have been tendered prior to foreclosure, and do not permit foreclosure without forty-five days notice. Again, the McKennas assert that the evidence was legally and factually insufficient to show that Atlas had the right to accelerate the notes, that Atlas gave proper notice of acceleration, and that the McKennas did not timely cure their default.

■ To determine the legal sufficiency of the court's ruling, we must review the record for evidence which supports the trial court's finding that Atlas's foreclosure was proper. *Holley,* 629 S.W.2d at 696. The Deeds of Trust which secured the Promissory Notes state that on the occurrence of any event of default, beneficiary may declare all sums secured hereby immediately due and payable and shall demand payment thereof by either a written demand or certified mail. Moreover, the deed of trust provisions permitted acceleration upon ten days written notice. When a note and deed of trust are executed contemporaneously as security instruments in the course of a single transaction, they are to be considered as though they are in fact a single instrument. *Bennett v. State Nat'l Bank, Odessa, Tex.,* 623 S.W.2d 719, 721 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). There was evidence that Atlas gave notice of acceleration in December of 1987. The McKennas then filed this lawsuit and obtained a temporary restraining order. Eventually, an agreed order was entered into which allowed Atlas to foreclose if the McKennas did not make timely payments. It is undisputed that the McKennas did not cure their default by paying the monies due on the loan. Because there was some evidence for the trial court's finding that Atlas properly accelerated the notes and the McKennas did not cure their default, the McKennas cannot now overcome the first hurdle of the *Holley* test, and thus we find there was some evidence to support the trial court's finding. The McKennas did not establish as a matter of law that Atlas's foreclosure was improper. *See Holley,* 629 S.W.2d at 696.

In our consideration of whether the evidence was factually insufficient to support the trial court's finding that Atlas's foreclosure was proper, we must now consider all the evidence and determine if the finding is against the great weight and preponderance of the evidence. *Watson,* 320 S.W.2d at 816.

The McKennas assert that the Mortgage and Security Agreements provide that upon default of payment they are entitled to forty-five days notice of default prior to foreclosure and that they may cure the alleged default and redeem the property. They also argue that the deed of trust provisions are in violation of the Mortgage and Security Agreements and the conflict should be resolved in their favor, because acceleration is disfavored under the law and documents will be construed against the right to accelerate.

Atlas argues that the evidence also showed that after Atlas's first notice of default and acceleration in December of 1987, the McKennas filed this lawsuit and an agreed order was entered into, which stated that "should Plaintiff refrain or refuse to tender to Defendant each monthly payment in a timely manner then Defendant would be entitled to proceed with its foreclosure sale on the first Tuesday of that month." When the McKennas tendered late payments, another agreed temporary injunction was entered into, and it stated, "should defendant not receive said payment by 5:00 o'clock p.m. the eighth day of any month hereafter, or should any of plaintiffs' checks to defendant for said payment be dishonored, then defendant shall have the right to proceed with its foreclosure sale on the first Tuesday immediately following any such defaulting month, without further order of this Court." Additionally, as previously discussed the Deeds of Trust provided for acceleration. After viewing all the evidence, we do not find the trial court's finding that Atlas's foreclosure and notice was proper, or its finding that the McKennas did not cure their default, to be so against the great weight and preponderance of the evidence as to be manifestly unjust. The McKennas' second, third, and fourth points of error are overruled.

In their fifth and sixth points of error, the McKennas argue the evidence was legally and factually insufficient to show Atlas did not breach its contract with the McKennas, and that the McKennas should not recover attorney's fees. The McKennas argue that the evidence was legally insufficient to support the trial court's findings that: 1) Atlas was not responsible for the payment of taxes or insurance premiums; 2) Atlas did not breach the contract; and 3) the McKennas are not entitled to recover attorney's fees. We must look to the evidence to see if there is any evidence to support these findings.

The McKennas argue the evidence conclusively establishes that they never received any proof of the alleged escrow increases, as required in the contract. The Mortgage and Security Agreements provide in pertinent part that:

> Mortgagee will, during the term of the Primary Note, continue to pay all taxes and insurance in the form of its escrow payment to the Prior Mortgagee and the Mortgagor has no obligation for the payment of either taxes or insurance.... Mortgagee shall submit proof of escrow increase with any demand for payment of the same.

There was testimony by Fran George that she sent the McKennas a copy of the annual escrow analysis from First Texas showing the escrow amount, escrow shortage, and the new payments. These coupon books were also entered into evidence. Ms. George also testified that she mailed, or the McKennas received, correspondence from mortgage corporations and city taxing authorities of increased or delinquent charges. These documents were also entered into evidence. Additionally, under the Mortgage and Security Agreements, Atlas was responsible to "pay all taxes and insurance in the form of its escrow payment," not to pay the taxes and insurance directly to the companies. Thus, there was some evidence for the trial court's finding that Atlas gave the McKennas proof of the escrow increases and did not breach the

contract, and that Atlas was not responsible for payment of taxes or insurance premiums. Since the McKennas have not established that Atlas breached the agreements in question, they are not entitled to attorney's fees. The McKennas have not overcome the first hurdle of the *Holley* test; we find there was some evidence to support the trial court's finding they did not establish that Atlas breached the contract, or should be responsible for insurance and taxes as a matter of law, or that the McKennas are entitled to attorney's fees. *See Holley,* 629 S.W.2d at 696.

In order to make the determination that the evidence was factually sufficient to support the trial court's findings we must review all the evidence and determine if the findings are against the great weight and preponderance of the evidence as to be manifestly unjust. *Watson,* 320 S.W.2d at 816; *In re King's Estate,* 244 S.W.2d at 661. The McKennas testified that they never received proof of the escrow increases. As already stated in the facts above there was testimony contradicting the McKennas' statements. Ms. George testified she sent notices of the escrow increases. Again, after looking at all the evidence we find that the court's findings were not so against the great weight and preponderance of the evidence as to be manifestly unjust. McKennas' fifth and sixth points of error are overruled.

 Atlas cross-appeals in three points of error. In its first and second cross-points, Atlas argues the trial court erred in not awarding it attorney's fees. Atlas asserts that as the prevailing party in a suit on a contract it is entitled to attorney's fees. And further, that the only discretion the trial court as fact-finder had regarding attorney's fees to Atlas was to the amount of attorney's fees to be awarded.

In the court's findings of fact it states that attorney's fees could not be awarded to either side because the court did not hear evidence as to the breakdown in categories of the attorney's fees in order to make such a finding of amounts. Following a review of the record we conclude that although Atlas has submitted an extensive record of billed hours and charges, there is no evidence as to the breakdown in categories to make a finding. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11–12 (Tex.1991). Atlas's first and second cross-points are overruled.

In its third cross-point Atlas argues that the trial court erred in rendering judgment taxing one-half of the costs of the auditor's fees against Atlas. Atlas asserts that the trial court failed to provide good cause for its decision to depart from the general rule that the successful party recover its costs. We disagree. Both Atlas and the McKennas requested and benefited from the appointment of the auditor. This fact shown on the face of the trial court's record constitutes good cause for assessing a portion of the cost for the auditor against Atlas. *See Overstreet v. Home Indem. Co.,* 696 S.W.2d 188, 190 (Tex.App.—Dallas 1985), *writ ref'd n.r.e. per curiam,* 704 S.W.2d 14 (Tex.1986). Atlas's third cross point is overruled.

Judgment is affirmed.