Michael W. STREETMAN and Laura E. Streetman, Appellants,

v.

BENCHMARK BANK, Appellee.

No. 11–93–221–CV.

Court of Appeals of Texas, Eastland.

Dec. 15, 1994.

Order Overruling Rehearing Jan. 12, 1995.

J. Jeffrey Springer, Wood, Springer & Lyle, Denton, for appellants.

Millard O. Anderson, Jr., Ludwick & Anderson, LLP, Dallas, W. Wendell Hall, Renée A. Forinash, Fulbright & Jaworski, San Antonio, for appellee.

## OPINION

DICKENSON, Justice.

Benchmark Bank sued Michael W. Streetman and his wife, Laura E. Streetman, for the balance due on delinquent promissory notes. The Streetmans filed a counterclaim for breach of contract, for breach of warranty, and for deceptive trade practices. The trial court entered a partial summary judgment for the Bank for $440,770.47 (the amount due on the promissory notes). The Streetmans' counterclaims were tried by a jury which found for the Streetmans on some of their claims and which assessed damages at $2,000,000.00. The trial court entered judgment notwithstanding the verdict that the Streetmans take nothing, and the Streetmans appeal.[1] We affirm.[2]

---

1. There is no appeal from the judgment for the amount due on the promissory notes.

2. This appeal was transferred from the Dallas Court of Appeals to this court pursuant to TEX. GOV'T CODE ANN. § 73.001 (Vernon 1988).

## The Jury's Findings

The questions which were submitted to the jury and the jury's answers read in relevant part as shown:

QUESTION 1A: Do you find from a preponderance of the evidence that Don Watts had the authority or the *apparent authority* of Benchmark Bank to promise Michael Streetman and/or Laura Streetman that *Benchmark Bank would pay all overdrafts* drawn on the M & L Distributing deposit account with Benchmark Bank?

ANSWER: YES

QUESTION 1B: Did the Streetmans and Benchmark Bank agree that Benchmark would cover *all overdraft checks* drawn on Benchmark by the Streetmans for checks written relating to the M & L Distributing Nintendo Cartridge Business?

ANSWER: YES

QUESTION 2: Did Benchmark Bank breach its agreement with the Streetmans?

ANSWER: YES

QUESTION 3: Did Benchmark Bank engage in any false, misleading or deceptive act or practice in its course of dealings with the Streetmans which was a producing cause of damages, if any, to the Streetmans?

ANSWER: YES

QUESTION 4: Did Benchmark Bank make an express warranty that it would *cover all overdrafts* by the Streetmans?

ANSWER: YES

QUESTION 5: Did Benchmark Bank breach an express warranty which breach if any was a producing cause of damage, if any, suffered by the Streetmans?

ANSWER: YES

QUESTION 6: Did Benchmark Bank engage in any unconscionable action or course of action, which was a producing cause of damages to the Streetmans?

ANSWER: NO

QUESTION 7: Did Benchmark Bank engage in any such conduct knowingly?

ANSWER: NO

QUESTION 8: Do you find that there was a special relationship between the Bank and the Streetmans?

ANSWER: YES

QUESTION 9: Do you find that the Bank engaged in conduct, in the course of dealings with the Streetmans, which breached its duty of good faith and fair dealing and which was a proximate cause of the damages, if any, to the Streetmans?

ANSWER: YES

QUESTION 10: Do you find the breach of duty, if any, by the Bank was accompanied by malice on the part of the Bank?

ANSWER: NO

QUESTION 11: What sum of money, if any, if paid now in cash, do you find would fairly and reasonably compensate the Streetmans for their actual damages, if any?

ANSWER: $2,000,000.00

QUESTION 14: Do you find from a preponderance of the evidence that Benchmark Bank's failure to comply with the *agreement, if any, to pay all overdrafts* drawn on the M & L Distributing deposit account with Benchmark Bank was excused?

ANSWER: NO (Emphasis added)

Under the instructions of the trial court, because of the negative answers to Questions 7 and 10, the jury was not required to answer Questions 12 [3] and 13.[4]

## Points of Error

Appellants briefed four points of error in which they argue that the trial court erred: (Point No. 1) in granting the Bank's motion to disregard the jury's answers to questions concerning breach of contract, breach of warranty, and deceptive trade practices because there was evidence that the Bank's officer acted within the scope of his agency; (Point No. 2) in granting the Bank's motion to disregard the jury's answer concerning deceptive trade practices because Donald Gene

---

**3.** Question 12 asked: "What sum of money, if any, in addition to actual damages should be awarded."

**4.** Question 13 asked about "exemplary damages" caused by malice.

Watts was an agent for the Bank and had authority to negotiate loans and approve the payment of overdrafts; (Point No. 3) in granting the Bank's motion to disregard the finding that the foreseeable result of the Bank's actions was the lost profits of $2,000,-000.00; and (Point No. 4) in rendering judgment notwithstanding the verdict.[5]

### Background Facts

The Streetmans had been in the video rental business. In 1988, Mr. Streetman began to sell Nintendo cartridges out of the back of his pickup. The Nintendo business flourished, and the Streetmans decided to expand. In order to expand, they needed more financing than their original bank could authorize. They approached Benchmark Bank to ask for a loan and for assurance that their "overdraft" checks would be honored. Watts, the senior credit officer at the Bank, assisted the Streetmans with their loan. They opened a checking account for their business, M & L Distributing,[6] in December of 1988.

Over the next several months, the Streetmans wrote approximately 500 overdraft checks. The Bank collected service charges on a majority of these checks. At one point in time, their checking account was overdrawn $204,863.10. On June 8, 1989, the Streetmans bought a Nintendo distributorship.

All of the overdrafts were honored[7] until August 28, 1989, when the Bank suddenly stopped honoring their overdraft checks. Because of their lack of cash, the Streetmans were unable to purchase the Nintendo cartridges as soon as they became available, and they lost the valuable Nintendo distributorship which they had acquired. Their business failed.

### Standard of Review

A judgment notwithstanding the verdict can only be upheld when a directed verdict would have been proper. *Dodd v. Texas Farm Products Company,* 576 S.W.2d 812 at 815 (Tex.1979). In order to uphold the trial court's judgment notwithstanding the verdict, we must determine that no evidence supports at least one essential element of the jury's findings. Tex.R.Civ.P. 301; *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226 (Tex.1990); *Williams v. Bennett,* 610 S.W.2d 144 (Tex.1980).

In determining a "no evidence" question, we must consider only the evidence and reasonable inferences therefrom that tend to support the jury findings, disregarding all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670 (Tex.1990).

### Authority of Bank Officer

The issue that controls this case is whether there is any evidence to support the jury's finding that Watts had the authority to bind the Bank by promising to pay "all" of the Streetmans' overdrafts. There is evidence that Watts said that the Bank would never return a check unpaid.[8] However, in order to show that the Bank is liable for Watts' promise, there must be some evidence that Watts had the actual or apparent authority to make this agreement for the Bank. We overrule the first, second, and fourth points of error because there is no competent evidence of Watts' actual or apparent authority to pay "all overdrafts."

In order to show that Watts had actual authority, there must be some evidence that the Bank intentionally conferred the authority upon him; intentionally allowed him to believe that he possessed the authori-

---

5. The Bank has not filed any cross-points challenging the sufficiency of the evidence. See *Jackson v. Ewton,* 411 S.W.2d 715 (Tex.1967); *McDade v. Texas Commerce Bank, National Association,* 822 S.W.2d 713 (Tex.App.—Houston [1st Dist.] 1991, writ den'd).

6. The "M" and the "L" are for the initials of their first names.

7. The Bank returned five checks with the notation "insufficient funds" on July 18, 1989, but Loan Officer Watts said this was an error and notified the payees that the Bank had erred in returning those checks.

8. Mr. Streetman testified that Watts said the Bank would honor all overdrafts. The jury accepted Mr. Streetman's testimony in spite of contradictory testimony from Watts.

**216**

ty; or, by want of care, allowed him to believe that he possessed the authority. *Cameron County Savings Association v. Stewart Title Guaranty Company,* 819 S.W.2d 600 at 603 (Tex.App.—Corpus Christi 1991, writ den'd). Actual authority may be express or implied. There is no evidence that the Bank gave Watts the authority or that the Bank allowed Watts to believe that he had the authority to promise to pay all overdrafts drawn on the Streetmans' account. Watts testified that he did not have such authority. Further, the evidence conclusively establishes that banks have federally mandated lending limits and that both Watts and the Bank were aware that the Bank could not exceed this limit. Although the evidence is undisputed that Watts, as the senior credit officer of the Bank, had the authority to loan money and to approve the payment of overdrafts up to the Bank's lending limit, there is no evidence that Watts had the actual authority to promise to pay "all overdrafts" drawn on the account.

There is also no competent evidence that Watts had the apparent authority to make such a promise. Apparent authority is based upon the doctrine of estoppel and is created when the principal's conduct would lead a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Biggs v. United States Fire Insurance Company,* 611 S.W.2d 624 at 629 (Tex.1981); *Southwest Title Insurance Company v. Northland Building Corporation,* 552 S.W.2d 425 (Tex.1977); *Cameron County Savings Association v. Stewart Title Guaranty Company,* supra. Apparent authority is not available where the other party has notice of the limitations of the agent's power. *Douglass v. Panama, Inc.,* 504 S.W.2d 776 at 779 (Tex.1974). The undisputed evidence clearly shows that the Streetmans knew from dealing with their previous bank that banks have lending limits; consequently, they knew that Watts' authority was limited and that he could not agree to pay "all overdrafts" drawn on their account.

Moreover, a reasonably prudent person would not believe that Watts was acting within the scope of his authority by promising to pay "all overdrafts" drawn on the account.

We hold that there is no evidence that Watts was acting within the scope of his authority by promising to pay "all overdrafts" or that the Bank engaged in any false, misleading, or deceptive acts in its course of dealings with the Streetmans. The trial court properly disregarded Jury Questions 1A, 1B, 2, 3, 4, and 5. The first, second, and fourth points of error are overruled. The third point becomes moot and need not be discussed.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

In their motion for rehearing, appellants contend that this court ignored the supreme court's recent opinion in *Celtic Life Insurance Company v. Coats,* 885 S.W.2d 96 (Tex. 1994). That case is distinguishable because no reasonable person could have believed that Watts was acting within the scope of his authority when he promised to pay "all overdrafts" drawn on appellants' account and because appellants knew from previous experience that a bank could not legally promise to pay "all overdrafts." See *Celtic Life Insurance Company v. Coats,* supra at 99. Appellants' motion for rehearing is overruled.

McCLOUD, C.J., Retired, Court of Appeals, Eastland, sitting by assignment, pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).