**Charlotte DUGGAN d/b/a Creative Designs Fine Jewelry, Appellant,**

v.

**E. Pierce MARSHALL, Executor of the Estate of J. Howard Marshall, II and Wells Fargo Bank (Texas) N.A., f/k/a First Interstate Bank of Texas, N.A., Houston, Texas, Successor Administrator with Will Annexed of the Estate of Jewell Dianne Walker, Appellees.**

**No. 01–96–00666–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 23, 1999.

---

Dan McEvily, Daniel V.S. McEvily, Tom Alexander, Alexander & Associates, Houston, for Appellant.

Susan Louise Kopecky, Porter & Hedges, Randall Lamb, Dinkins, Kelly, Lenox & Lamb, L.L.P., Daniel K. Hedges, Porter & Clements, Houston, for Appellees.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

DAVIE L. WILSON, Justice.

Appellant and intervenor in the court below, Charlotte Duggan d/b/a Creative Designs (Duggan), appeals from a judgment decreeing that Duggan take nothing and awarding $191,800 to appellee E. Pierce Marshall, as executor of the Estate of J. Howard Marshall. We modify the judgment, and, as modified, affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

J. Howard Marshall (Marshall) sued Jewell Diane ("Lady") Walker's estate in an attempt to recover the value of gifts he had given to Walker during their lengthy relationship. Marshall met Walker in 1982. In 1985, Walker began ordering jewelry from Duggan. Walker paid for the jewelry with checks signed and otherwise left blank by Marshall. In 1988, Marshall, Walker, and Duggan met and discussed setting up a revolving account with Duggan into which Marshall would pay $20,000 to $25,000 a month. The credit limit on the account was to be $350,000. Marshall signed a letter personally guaranteeing Walker's purchases. The letter stated the following:

> Dear Ms. Duggan, this is to confirm that I authorize DiAnne Walker to sign my name on my behalf, and in my stead, for purchases made from and through CDC,[1] or you personally, and that I

---

1. CDC was the name of Duggan's first jewelry business. CDC was renamed Creative De- signs Fine Jewelry in 1986.

agree to be solely responsible for those purchases.

After Walker's death in 1991, Marshall's son and two attorneys went to Duggan's business to look into the account. The account ledger indicated the following: (1) Duggan was charging Marshall 20 percent interest, which totaled $274,000; (2) Marshall had paid Duggan $908,000 in purchases; and (3) Duggan had paid Walker $224,000 in pass-throughs.[2] After Marshall filed suit against Walker's estate to recover the value of everything he had given her, Duggan intervened to attempt collection of a $425,000 balance Duggan claimed Marshall and/or Marshall Petroleum allegedly owed on the open account with Creative Designs.

Marshall pleaded usury as an affirmative defense and filed a counterclaim for common-law usury and for penalties pursuant to TEX. FIN.CODE ANN. §§ 305.001, 305.002 (Vernon 1998).[3] Marshall died before the trial of the case, and the suit was continued by E. Pierce Marshall as executor of Marshall's estate.

The jury found that Marshall had guaranteed payment of the Creative Designs account and that the balance of the account, considering the cost of the goods and services, interest to October 31, 1991, and sales tax, was $232,500. The jury also found that Marshall and Duggan had agreed to a 20 percent interest rate. The trial court, however, rendered judgment that Duggan take nothing and that Marshall's estate recover the $191,800 Marshall had paid in usurious interest to Duggan.

On appeal, Duggan complains the trial court erred when it rendered judgment *non obstante verdicto* and when it rendered judgment for Marshall based on

usury. Additionally, Duggan alleges the trial court should have modified the amount of damages the jury awarded to Duggan.

## USURY

In Duggan's second issue, she contends neither Marshall nor his estate was entitled to a defense of usury because (1) Marshall was a guarantor of a corporate debt and (2) Marshall's usury claim did not survive his death.

### Marshall as Guarantor

■ Duggan relies on *Houston Sash and Door Company, Inc. v. Heaner*, 577 S.W.2d 217, 222 (Tex.1979), for the proposition that a guarantor of a corporate debt on an open account cannot assert a claim for usury. Although this proposition may be true, *see id.* at 222, it is not applicable to the present case because the evidence supports the jury's finding that Marshall, not Marshall Petroleum, opened the account with Duggan. The guarantee letter was signed by Marshall and specifies that Marshall is to be "solely responsible"[4] for the purchases. Duggan admitted the purchaser of the jewelry was Walker, not Marshall Petroleum. The checks to pay for the jewelry came from Marshall, not Marshall Petroleum. Consequently, Marshall, as an individual, agreed to and actually paid the usurious interest, entitling him to a claim for usury.

### Marshall's Death

■ Duggan alleges Marshall's usury claim did not survive his death. Duggan relies on *Childs v. Taylor Cotton Oil Company*, which states as follows:

Usury statutes are penal in nature and are strictly construed, and penalties for

---

2. When Duggan received a monthly payment on the account from Marshall, she would credit only part of the amount to Marshall's account. The remainder was given to Walker in cash.

3. Sections 305.001 and 305.002 of the Finance Code are codifications, without substantive change, of former TEX.REV.CIV. STAT.

ANN. art. 5069–1.06(1), (2), which was in effect at the time Marshall filed his counterclaim.

4. Marshall's being "solely responsible" belies the notion that Marshall Petroleum guaranteed anything. Rather, Marshall, as an individual, was in direct privity with Creative Designs.

excessive interest charges are restricted to immediate parties to the transaction creating the usury defense. Usury defense is personal to the debtor.... It does not survive the death of the obligor.

612 S.W.2d 245, 251 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.) (citations omitted). The cases cited by Duggan regard claims for statutory penalties for usury. Marshall's estate has conceded that it is not entitled to statutory penalties for usury. However, Marshall's estate is not precluded from prevailing on its common-law usury counterclaim, which was properly pleaded and is supported by the evidence.

 Although the legislature has "established a statutory scheme providing for the recovery of usurious interest contracted for, charged, or received, the legislature neither expressly declared nor necessarily implied an intention to abrogate the common-law remedy." *Coppedge v. Colonial Sav. & Loan Ass'n,* 721 S.W.2d 933, 938 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The common-law action to recover usurious interest paid was established in Texas in *Bexar Building & Loan Association v. Robinson,* 78 Tex. 163, 14 S.W. 227 (1890). *Coppedge,* 721 S.W.2d at 938. "Repeal of the common-law action and remedy by implication is disfavored and requires a clear repugnance between the common-law and statutory causes of action." *Id.* (citing *Thouvenin v. Rodrigues,* 24 Tex. 468, 479 (1859)). When the legislature creates a cause of action and a remedy for its enforcement, we regard that legislation as cumulative of the common-law cause of action and remedy, unless the statute expressly or impliedly negates the latter. *Coppedge,* 721 S.W.2d at 938 (citing *Juneman v. Franklin,* 67 Tex. 411, 3 S.W. 562, 563 (1887)). Therefore, the statutory action for usury did not repeal the common-law action established in *Robinson. Coppedge,* 721 S.W.2d at 938.

 Under the common law, a debtor who has paid usurious interest can recover the amount by which the interest paid exceeds the legal maximum. *Id.* When usury is properly pleaded and supported by the evidence, then the measure of damages is a matter of law, and the court has the duty to apply the proper measure of damages. *Miller v. First State Bank,* 551 S.W.2d 89, 102 (Tex.Civ.App.—Fort Worth 1977), *modified on other grounds,* 563 S.W.2d 572 (Tex.1978). At common law, when an injury affects a person's estate, on the death of that person, the right of action passes to the executor or assignee as part of the decedent's assets. *G.H. & S.A. R.R. v. Freeman,* 57 Tex. 156 (1882). Therefore, the trial court was authorized to render judgment for Marshall's estate in the amount of $191,800 against Duggan upon the jury's finding that Duggan and Marshall had agreed to a 20 percent interest rate, which the parties agree is usurious.

 However, there is no basis for a take-nothing judgment against Duggan under a claim of common-law usury. Marshall's estate asserts that usury is an affirmative defense. Although cases on usury have referred to usury as an "affirmative defense," we have found no case law to support Marshall's contention that common-law usury is an affirmative defense in the sense that a finding of usury would deny a plaintiff's right to judgment for any and all elements of damages. Under common-law usury, a usurious contract is unenforceable only as to *interest. See Danziger v. San Jacinto Sav. Ass'n,* 732 S.W.2d 300, 304 (Tex.1987) (awarding only interest in common-law cause of action). Forfeiture of principal is a statutory penalty. *See* TEX. FIN.CODE §§ 305.001, 305.002.[5] Because statutory penalties did not survive Marshall's death, Marshall's estate is not entitled to a forfeiture of the $232,500 in value for goods received that the jury determined Marshall owed on the account with Duggan.

On issue two, we hold Marshall was entitled to recover on his counter-claim for usurious interest. However, he cannot use

---

5. See note 3, *supra.*

an "affirmative defense" to nullify the jury's finding of the principal amount due on the account.

We overrule issue two.

## JUDGMENT *NON OBSTANTE VERDICTO*

In Duggan's first issue, she contends the trial court, in effect, rendered an improper judgment *non obstante verdicto* when it disregarded the jury's finding that $232,500 remained unpaid and owing on Marshall's account with Creative Designs. Duggan suggests the trial court disregarded the jury's finding of $232,500 because the court concluded there was no evidence to support it. However, the words of the judgment contradict any notion that the court disregarded the jury's findings on the basis of insufficient evidence. The judgment states as follows:

> The court is of the opinion that judgment should be rendered on the verdict and on the court's findings regarding attorney's fees. The jury's verdict is incorporated for all purposes.

Given this statement, we conclude the trial court disregarded the jury's finding that Marshall owed Duggan $232,500, not because there was no evidence to support the jury's finding, but because the court believed that Marshall was entitled to prevail on his affirmative defense. As discussed above, however, Marshall could not use the "affirmative defense" of usury to nullify his obligation on the principal amount due.

We sustain issue one.

## MODIFICATION OF DAMAGE AWARD/GRANTING A NEW TRIAL ON DAMAGES

In Duggan's third issue, she asserts the trial court should have modified the amount of damages the jury awarded her or granted her a new trial on damages. In issue three, Duggan also includes three questions regarding fraud, unjust enrichment, and availability of a witness.

### *Insufficient Evidence to Support Damage Award*

Duggan alleges the damages were inadequate because there was no evidence to support the jury's computation of them. The trier of fact has discretion to award damages within the range of evidence presented at trial. *City of Houston v. Harris County Outdoor Adver. Ass'n*, 879 S.W.2d 322, 334 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The jury was presented with several differing amounts during the trial. Duggan claimed the account balance was $425,309.19. Marshall's expert, in contrast, calculated two different balances for the jury. One balance, $15,000 to Marshall's credit, represented an amount Marshall's expert claimed Marshall had overpaid Duggan, using a six percent interest rate and taking out the pass-throughs to Walker. Another balance, $236,000, represented the amount Duggan claimed Marshall owed ($425,309.19), using a six percent interest rate, and including the $224,000 pass-throughs to Walker. A fourth balance was presented to the jury through Duggan's "desk notes," which indicated she had prepared a statement one month before to Walker's death for a balance of $165,356.03.

We are not permitted to disregard the jury's damages award on the basis that the jury's reasoning in arriving at its figure is unclear. *Adams v. Petrade Int'l, Inc.* 754 S.W.2d 696, 710 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Therefore, because the $232,500 jury award is an amount within the range of evidence presented to the jury, we conclude that there was sufficient evidence to support the damages award.

### *Interest and Sales Tax*

Duggan further alleges the jury's answers to questions on interest and sales tax were against the great weight and preponderance of the evidence. The only question regarding both interest and sales tax was included in Jury Question No. 17, which asked the jury to find the amount

unpaid and owing on the Creative Design Account, and required the jury to: "(a)nswer in dollars and cents, considering the cost of the goods and services, interest to October 31, 1991, and sales taxes."[6] The jury was presented with evidence that the maximum interest rate allowed by law was 18 percent, as well as with evidence that the maximum interest rate allowed by law was six percent.

Sales tax was a contested issue at trial. Duggan alleged a Texas Sales Tax Resale Certificate was provided to her by Judy Wilson–Wise, an employee of Marshall Petroleum, so that Marshall could avoid paying sales tax on his purchases. However, Marshall's estate denied Duggan had received any such sales tax resale certificate from him or Wilson–Wise.[7] Marshall's handwriting expert testified the signature on the certificate was not Marshall's signature. Moreover, the certificate states Marshall Petroleum is engaged in the business of diamonds and jewelry when, in fact, Marshall Petroleum never had anything to do with diamonds or jewelry, nor did it even have a sales tax identification number. Additionally, the Texas Comptroller's Office examined Creative Designs's records, questioning the validity of the Marshall Petroleum sales tax certificate and 28 other resale certificates in Duggan's records.

It is improper to engage in the conjecture of breaking down a damages award into its component parts. *Transit Management Co. of Laredo v. Sanchez*, 886 S.W.2d 823, 826 (Tex.App.—San Antonio 1994, no writ). The jury may or may not have included sales tax in arriving at its award and may have included an interest of six percent or 18 percent. Because the elements of damages were not segregated,

it would be improper for us to speculate on how the jury divided its award of $232,500 among principal, interest, and sales tax. *See Hernandez v. American Appliance Mfg. Corp.*, 827 S.W.2d 383, 389 (Tex. App.—Corpus Christi 1992, writ denied).

### Fraud

Duggan further alleges as part of issue three that the jury's answers to the fraud questions were legally insufficient and against the great weight and preponderance of the evidence. Duggan's allegations of fraud included Marshall's (1) promising to pay for goods and services and (2) providing Duggan with a false resale tax certificate known by him to be false. Marshall's estate presented evidence that Marshall paid Creative Designs a total of $1.3 million from 1985 to 1991. Creative Designs's ledgers indicated there were $908,000 in purchases from March 1988 until Walker's death in July 1991.[8] During that time, Marshall paid Creative Designs $961,000. Therefore, the jury could have determined Marshall paid for all of the goods and services he received from Duggan. Furthermore, as stated above, Marshall presented evidence to contradict Duggan's allegations regarding the false sales tax resale certificates. Accordingly, we conclude there was sufficient evidence to support the jury's finding that Marshall did not defraud Duggan.

### Anna Nicole Smith

Duggan maintains she was prevented from presenting the testimony of Anna Nicole Smith at trial. Smith was served with a subpoena for her deposition on November 12, 1994. The subpoena was quashed on December 1, 1994. At the commencement of the trial, counsel for all parties entered a stipulation whereby (1)

---

6. Question 22 asked what percentage of interest Ms. Duggan had charged.

7. Marshall Petroleum employees testified that Wilson–Wise was never present for an alleged telephone discussion in which a sales tax number was provided to Creative Designs. Furthermore, the post office box number and zip code for Marshall Petroleum on the certificate was wrong. According to the testimony, Wilson–Wise, a 15–year Marshall Petroleum employee, was not a forgetful person who would give out a nonexistent tax identification number, an incorrect post office number, or an incorrect zip code.

8. Before March 1988, Marshall had paid for each item separately on a "cash and carry basis."

Marshall's estate withdrew its objections to Smith's testimony and (2) Duggan and the other parties withdrew their objections to the testimony of Dale Clem. The clerk's record is devoid of any efforts by Duggan to secure Smith's attendance at trial. Therefore, in light of the stipulation, Duggan's complaint that she was prevented from presenting Smith's testimony at trial is without merit.

## Unjust Enrichment

Duggan alleges the trial court erred in failing to render a judgment for her on the theory of unjust enrichment against Marshall or the Estate of Lady Walker. However, no question on unjust enrichment was submitted to the jury. Therefore, any complaint on appeal about the failure to submit the issue of enrichment to the jury is waived. TEX.R. CIV. P. 274.

We overrule issue three.

## Conclusion

We modify the judgment to reflect an award of $232,500 to Duggan. We further modify the judgment by providing that the $232,500 awarded to Duggan be offset by the $191,800 awarded to Marshall. We affirm the judgment as so modified.