NO. 07-05-0449-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 14, 2007
_____

GIBSON PLUMBING HEATING & AIR CONDITIONING, INC.
AND ROBIN L. HUGHES, APPELLANTS

V.

COOLBAUGH CHIROPRACTIC, APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-522,434; HONORABLE JOHN T. FORBIS, JUDGE
_____

Before QUINN, C.J., and CAMPBELL, J. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Gibson Plumbing Heating and Air Conditioning, Inc. appeals a judgment in favor of appellee Coolbaugh Chiropractic for services rendered a Gibson employee. We will affirm the judgment of the trial court.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Gibson employed Robin Hughes as a part-time customer service representative and file clerk. On July 31, 2001, Hughes tripped over a box in the Gibson office. When her back later began to hurt, Hughes told her supervisor, who told her to report the injury to Leah Ray, Gibson's bookkeeper. Ray's responsibilities included filing the company's insurance claims. Gibson did not subscribe to workers' compensation insurance, but instead carried a reimbursement policy with a $1,000 deductible per injury.

The parties agree that Hughes asked Ray if she could seek medical attention from her chiropractor, Coolbaugh. They agree also that Ray told her she could do so, and told her to have him send Gibson the bill. Testimony differed about other contents of the conversation. At one point, Ray testified she told Hughes she could go see her doctor, but "if it turned out to be more," she would have to seek treatment from someone on the approved list. Hughes testified Ray never told her she could not see her doctor more than once.

On August 1, 2001, a representative from Coolbaugh's office called Gibson, asking if Gibson carried workers' compensation insurance. Ray told the caller Gibson did not have workers' compensation insurance but did have insurance, and Coolbaugh should send Gibson a bill to be submitted for payment.

Two working days before her accident, Hughes had given Gibson notice that she was leaving her employment. Because of the accident, she ultimately worked only one week after she gave notice. During that time, she did not tell Ray she was continuing her

treatment with Coolbaugh. Over the next four months, she ultimately made some 51 visits to Coolbaugh's office for treatment.

Dr. Coolbaugh called Ray in October of 2001 to request the name of Gibson's insurance carrier. Ray again asked for the bill but did not give Coolbaugh the name of the insurance company. Coolbaugh did not indicate that Hughes's treatment was ongoing. Coolbaugh continued to treat Hughes until November 29, 2001. Dr. Coolbaugh testified that he sent a bill to Gibson on November 2, 2001, but Gibson claimed it never received the bill. Dr. Coolbaugh testified he also sent a second bill to Gibson after he completed her treatment. Gibson again indicated it never received it. The only bill Gibson acknowledged receiving was one hand-delivered by Hughes in June 2002. Coolbaugh sued Gibson and Hughes for $12,425, the total bill for Hughes's 51 office visits, and attorney's fees.

After a bench trial, the trial court rendered judgment against Gibson in the amount of $3,000 plus attorney's fees of $2,000 and against Hughes for $9,425 plus $1,750 in attorney's fees. Hughes has not appealed the trial court's judgment. Gibson raises six issues in its appeal.

Gibson's first issue presents the narrow question whether the evidence was legally sufficient to show that Leah Ray had actual authority to authorize more than one medical treatment for Hughes. Addressing the issue, we will examine the record in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which supports the finding, and we will disregard all evidence or reasonable inferences therefrom to the contrary. *Glover v. Texas Gen. Indem. Co.*, 619

3

S.W.2d 400, 401 (Tex. 1981). The law does not presume agency and the individual alleging agency has the burden to prove its existence. *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944); *Disney Enterprises, Inc. v. Esprit Finance, Inc.*, 981 S.W.2d 25, 30 (Tex.App.–San Antonio 1998, pet. dism'd w.o.j.).

Gibson's second issue presents the same question with regard to the legal sufficiency of the evidence of Ray's apparent authority. Both actual and apparent authority are created through the conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Suarez v. Jordan*, 35 S.W.3d 268, 273 (Tex.App.–Houston [14th Dist.] 2000, no pet.).

For actual authority, there must be evidence the principal intentionally conferred the authority upon the agent; intentionally allowed him to believe that he possessed the authority; or, by want of care, allowed him to believe that he possessed the authority. *Streetman v. Benchmark Bank*, 890 S.W.2d 212, 215-16 (Tex.App.–Eastland 1994, writ denied). As noted, in this case, the question is whether Ray had "actual authority to authorize more than one medical treatment" for Hughes. During the cross-examination of Ray, the following transpired:

> Q: ... I'm just saying *you have the authority to authorize more than one visit* to a doctor's office, correct?
> A: Yes.
>
> ...
>
> Q: ... So you authorized an employee to go see the doctor, that employee goes to see the doctor, and that's pretty much the end of your involvement. You can't authorize– *you can authorize more than one*, but you didn't this time so your testimony is.

4

A: That's correct.

Q: Of course in deposition you also testified that you have never authorized anybody to have more than one visit; is that correct?

A: No. It may have been what I said at the time, but I was confused. *I can authorize more than one* if it's like to have the stitches removed.

Q: Okay. So you can authorize more than one. Can you authorize more than two?

A: It depends on the case.

...

Q: ... Can you authorize more than three?

A: I would get permission to do it from Scott Gibson.

(emphasis added). This testimony provides legally sufficient evidence to demonstrate Gibson had conferred on Ray actual authority to authorize more than one medical treatment for Hughes. *Glover*, 619 S.W.2d at 401; *Streetman*, 890 S.W.2d at 215-16. We overrule Gibson's first issue on appeal. Because we have determined Ray's actual authority to authorize more than one medical treatment for Hughes was supported by legally sufficient evidence, we need not address Gibson's second issue regarding her apparent authority.

We next consider Gibson's fourth issue asking whether the evidence is legally sufficient to support an award of $3,000 for actual damages against Gibson. The evidence at trial demonstrates the cost of Hughes' first visit was $385 and the total bill for 51 visits was $12,425.[2] Gibson complains that at no time did the balance ever total exactly $3,000[3]

---

[2] The "Statement of Account," beginning on August 1, 2001 and ending November 29, 2001, was admitted in evidence at trial.

[3] Gibson notes that Hughes's account surpassed $3,000 during the course of her 16th visit on August 31, 2001. Gibson states the balance was $2,940 after the 15th visit and

and that the "award of $3,000.00 was a number arbitrarily pulled from the proverbial hat, and not based on any evidence in the case . . . . [and] the judgment should be reversed . . . ." We disagree.

The trier of fact has discretion to award damages within the range of evidence presented at trial and we are not permitted to disregard the damages award because the trier of fact's reasoning in arriving at its figure is unclear. *Duggan v. Marshall*, 7 S.W.3d 888, 893 (Tex.App.–Houston [1st Dist.] 1999, no pet.); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 710 (Tex.App.–Houston [1st Dist.] 1988, writ denied). Evidence corresponding to the precise amount found by the trier of fact is not essential. *See Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 695 (Tex.App.–Austin 1989, no writ) (deceptive trade practice claim). Since the amount awarded was within the range of evidence presented at trial, we overrule Gibson's fourth issue on appeal. *Duggan*, 7 S.W.3d at 893. Because we find the damages award of $3,000 was proper, we need not address Gibson's third issue questioning whether the evidence is legally sufficient to support a judgment for more than the fee for the first visit. Our disposition of Gibson's fourth issue also pretermits our consideration of its sixth issue by which it challenges Coolbaugh's recovery of attorney's fees by contending the demand for $12,425 was excessive.

By its fifth issue, Gibson asserts Coolbaugh failed to present his claim to Gibson, precluding his recovery of attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. §38.002 (providing the prerequisite that the claimant present the claim to the opposing

---

$3,120 after the 16th visit.

6

party in order to recover its attorney's fees). We overrule the issue. As noted, Coolbaugh testified he sent a second bill to Gibson after he completed the treatment of Hughes in November 2001. Gibson claimed it never received the bill. The fact finder, as opposed to the reviewing court, enjoys the right to resolve credibility issues and conflicts within the evidence. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973). The trier of fact may choose to believe all, part, or none of the testimony of any particular witness. *In the Interest of R.D.S.*, 902 S.W.2d 714, 716 (Tex.App.–Amarillo 1995, no writ). Coolbaugh's testimony supports a conclusion the claim was presented in November 2001.

Further, Hughes testified she hand-delivered a copy of Coolbaugh's final bill to Gibson in June 2002. In her testimony, Ray confirmed she received the bill at that time. Coolbaugh's original petition is dated June 16, 2003.[4] The trial court was justified in concluding the claim was presented as required under section 38.002.

Having overruled Gibson's issues on appeal, we affirm the judgment of the trial court.[5]

James T. Campbell<br>
Justice

---

[4] Even if Gibson did not receive the bill from Coolbaugh until June 2002, a question we need not decide, it was still received more than 30 days prior to the commencement of this lawsuit. *See* Tex. Civ. Prac. & Rem. Code Ann. §38.002 (3) ("payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented").

[5] In its prayer for relief, Coolbaugh requests that we award "attorney's fees for Appellee on appeal." In its judgment, the trial court did not award attorney's fees for appeal to Coolbaugh. A party who seeks to alter the trial court's judgment must file a notice of appeal. Tex. R. App. P. 25.1(c). Without a showing of just cause, we may not grant him more favorable relief than did the trial court. *Id*.