NO. 07-05-0449-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 14, 2007


______________________________



GIBSON PLUMBING HEATING & AIR CONDITIONING, INC.


AND ROBIN L. HUGHES, APPELLANTS



V.



COOLBAUGH CHIROPRACTIC, APPELLEE



_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-522,434; HONORABLE JOHN T. FORBIS, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL, J. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Appellant Gibson Plumbing Heating and Air Conditioning, Inc. appeals a judgment
in favor of appellee Coolbaugh Chiropractic for services rendered a Gibson employee. We
will affirm the judgment of the trial court.

 Gibson employed Robin Hughes as a part-time customer service representative and
file clerk. On July 31, 2001, Hughes tripped over a box in the Gibson office. When her
back later began to hurt, Hughes told her supervisor, who told her to report the injury to
Leah Ray, Gibson's bookkeeper. Ray's responsibilities included filing the company's
insurance claims. Gibson did not subscribe to workers' compensation insurance, but
instead carried a reimbursement policy with a $1,000 deductible per injury.

 The parties agree that Hughes asked Ray if she could seek medical attention from
her chiropractor, Coolbaugh. They agree also that Ray told her she could do so, and told
her to have him send Gibson the bill. Testimony differed about other contents of the
conversation. At one point, Ray testified she told Hughes she could go see her doctor, but
"if it turned out to be more," she would have to seek treatment from someone on the
approved list. Hughes testified Ray never told her she could not see her doctor more than
once.

 On August 1, 2001, a representative from Coolbaugh's office called Gibson, asking
if Gibson carried workers' compensation insurance. Ray told the caller Gibson did not
have workers' compensation insurance but did have insurance, and Coolbaugh should
send Gibson a bill to be submitted for payment. 

 Two working days before her accident, Hughes had given Gibson notice that she
was leaving her employment. Because of the accident, she ultimately worked only one
week after she gave notice. During that time, she did not tell Ray she was continuing her
treatment with Coolbaugh. Over the next four months, she ultimately made some 51 visits
to Coolbaugh's office for treatment. 

 Dr. Coolbaugh called Ray in October of 2001 to request the name of Gibson's
insurance carrier. Ray again asked for the bill but did not give Coolbaugh the name of the
insurance company. Coolbaugh did not indicate that Hughes's treatment was ongoing. 
Coolbaugh continued to treat Hughes until November 29, 2001. Dr. Coolbaugh testified
that he sent a bill to Gibson on November 2, 2001, but Gibson claimed it never received
the bill. Dr. Coolbaugh testified he also sent a second bill to Gibson after he completed her
treatment. Gibson again indicated it never received it. The only bill Gibson acknowledged
receiving was one hand-delivered by Hughes in June 2002. Coolbaugh sued Gibson and
Hughes for $12,425, the total bill for Hughes's 51 office visits, and attorney's fees.

 After a bench trial, the trial court rendered judgment against Gibson in the amount
of $3,000 plus attorney's fees of $2,000 and against Hughes for $9,425 plus $1,750 in
attorney's fees. Hughes has not appealed the trial court's judgment. Gibson raises six
issues in its appeal.

 Gibson's first issue presents the narrow question whether the evidence was legally
sufficient to show that Leah Ray had actual authority to authorize more than one medical
treatment for Hughes. Addressing the issue, we will examine the record in the light most
favorable to the finding to determine if there is any probative evidence, or reasonable
inferences therefrom, which supports the finding, and we will disregard all evidence or
reasonable inferences therefrom to the contrary. Glover v. Texas Gen. Indem. Co., 619
S.W.2d 400, 401 (Tex. 1981). The law does not presume agency and the individual
alleging agency has the burden to prove its existence. Buchoz v. Klein, 184 S.W.2d 271,
271 (Tex. 1944); Disney Enterprises, Inc. v. Esprit Finance, Inc., 981 S.W.2d 25, 30
(Tex.App.-San Antonio 1998, pet. dism'd w.o.j.). 

 Gibson's second issue presents the same question with regard to the legal
sufficiency of the evidence of Ray's apparent authority. Both actual and apparent authority
are created through the conduct of the principal communicated either to the agent (actual
authority) or to a third party (apparent authority). Suarez v. Jordan, 35 S.W.3d 268, 273
(Tex.App.-Houston [14th Dist.] 2000, no pet.).

 For actual authority, there must be evidence the principal intentionally conferred the
authority upon the agent; intentionally allowed him to believe that he possessed the
authority; or, by want of care, allowed him to believe that he possessed the authority. 
Streetman v. Benchmark Bank, 890 S.W.2d 212, 215-16 (Tex.App.-Eastland 1994, writ
denied). As noted, in this case, the question is whether Ray had "actual authority to
authorize more than one medical treatment" for Hughes. During the cross-examination of
Ray, the following transpired:

 Q: ... I'm just saying you have the authority to authorize more than one visit to a
doctor's office, correct?

 A: Yes.

 ...

 Q: ... So you authorized an employee to go see the doctor, that employee goes to
see the doctor, and that's pretty much the end of your involvement. You can't
authorize- you can authorize more than one, but you didn't this time so your
testimony is.

 A: That's correct.

 Q: Of course in deposition you also testified that you have never authorized
anybody to have more than one visit; is that correct?

 A: No. It may have been what I said at the time, but I was confused. I can
authorize more than one if it's like to have the stitches removed.

 Q: Okay. So you can authorize more than one. Can you authorize more than two?

 A: It depends on the case.

 ...

 Q: ... Can you authorize more than three?

 A: I would get permission to do it from Scott Gibson. 


(emphasis added). This testimony provides legally sufficient evidence to demonstrate
Gibson had conferred on Ray actual authority to authorize more than one medical
treatment for Hughes. Glover, 619 S.W.2d at 401; Streetman, 890 S.W.2d at 215-16. We
overrule Gibson's first issue on appeal. Because we have determined Ray's actual
authority to authorize more than one medical treatment for Hughes was supported by
legally sufficient evidence, we need not address Gibson's second issue regarding her
apparent authority.

 We next consider Gibson's fourth issue asking whether the evidence is legally
sufficient to support an award of $3,000 for actual damages against Gibson. The evidence
at trial demonstrates the cost of Hughes' first visit was $385 and the total bill for 51 visits
was $12,425. (2) Gibson complains that at no time did the balance ever total exactly $3,000 (3)
and that the "award of $3,000.00 was a number arbitrarily pulled from the proverbial hat,
and not based on any evidence in the case . . . . [and] the judgment should be
reversed . . . ." We disagree. 

 The trier of fact has discretion to award damages within the range of evidence
presented at trial and we are not permitted to disregard the damages award because the
trier of fact's reasoning in arriving at its figure is unclear. Duggan v. Marshall, 7 S.W.3d
888, 893 (Tex.App.-Houston [1st Dist.] 1999, no pet.); Adams v. Petrade Int'l, Inc., 754
S.W.2d 696, 710 (Tex.App.-Houston [1st Dist.] 1988, writ denied). Evidence corresponding
to the precise amount found by the trier of fact is not essential. See Carrow v. Bayliner
Marine Corp., 781 S.W.2d 691, 695 (Tex.App.-Austin 1989, no writ) (deceptive trade
practice claim). Since the amount awarded was within the range of evidence presented
at trial, we overrule Gibson's fourth issue on appeal. Duggan, 7 S.W.3d at 893. Because
we find the damages award of $3,000 was proper, we need not address Gibson's third
issue questioning whether the evidence is legally sufficient to support a judgment for more
than the fee for the first visit. Our disposition of Gibson's fourth issue also pretermits our
consideration of its sixth issue by which it challenges Coolbaugh's recovery of attorney's
fees by contending the demand for $12,425 was excessive.

 By its fifth issue, Gibson asserts Coolbaugh failed to present his claim to Gibson,
precluding his recovery of attorney's fees. See TEX. CIV. PRAC. & REM. CODE ANN.
§38.002 (providing the prerequisite that the claimant present the claim to the opposing
party in order to recover its attorney's fees). We overrule the issue. As noted, Coolbaugh
testified he sent a second bill to Gibson after he completed the treatment of Hughes in
November 2001. Gibson claimed it never received the bill. The fact finder, as opposed
to the reviewing court, enjoys the right to resolve credibility issues and conflicts within the
evidence. Ramo, Inc. v. English, 500 S.W.2d 461, 467 (Tex. 1973). The trier of fact may
choose to believe all, part, or none of the testimony of any particular witness. In the
Interest of R.D.S., 902 S.W.2d 714, 716 (Tex.App.-Amarillo 1995, no writ). Coolbaugh's
testimony supports a conclusion the claim was presented in November 2001. 

 Further, Hughes testified she hand-delivered a copy of Coolbaugh's final bill to
Gibson in June 2002. In her testimony, Ray confirmed she received the bill at that time. 
Coolbaugh's original petition is dated June 16, 2003. (4) The trial court was justified in
concluding the claim was presented as required under section 38.002. 

 Having overruled Gibson's issues on appeal, we affirm the judgment of the trial
court. (5)

 James T. Campbell

 Justice 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. The "Statement of Account," beginning on August 1, 2001 and ending November
29, 2001, was admitted in evidence at trial.
3. Gibson notes that Hughes's account surpassed $3,000 during the course of her
16th visit on August 31, 2001. Gibson states the balance was $2,940 after the 15th visit and
$3,120 after the 16th visit.
4. Even if Gibson did not receive the bill from Coolbaugh until June 2002, a question
we need not decide, it was still received more than 30 days prior to the commencement of
this lawsuit. See TEX. CIV. PRAC. & REM. CODE ANN. §38.002 (3) ("payment for the just
amount owed must not have been tendered before the expiration of the 30th day after the
claim is presented").
5. In its prayer for relief, Coolbaugh requests that we award "attorney's fees for
Appellee on appeal." In its judgment, the trial court did not award attorney's fees for
appeal to Coolbaugh. A party who seeks to alter the trial court's judgment must file a
notice of appeal. TEX. R. APP. P. 25.1(c). Without a showing of just cause, we may not
grant him more favorable relief than did the trial court. Id.



e in the
case of police broadcasts is the information known to the officer who made the broadcast
request. Williams v. State, 621 S.W.2d 609, 611 (Tex.Cr.App.1981). 

 Here, the trial court relied upon Edwards's recitation to Taylor of her observations
of appellant and M.C. in the motor home as the basis for probable cause to arrest
appellant. In analyzing whether an officer had probable cause to arrest when receiving
information from a crime victim or witness, the focus does not appear to be on the validity
or accuracy of the information, but on whether the officer was justified in relying on what
was told him. Mungia v. State, 911 S.W.2d 164, 167 (Tex.App.-Corpus Christi 1995, no
pet.) Indeed, the modern position is that any person purporting to be a crime victim or
witness may be presumed reliable, though the police must remain alert to the existence of
any circumstances which would make that presumption inoperative in a particular case. 
Id. (quoting W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, §
3.4(a), p. 719 (West 1987)). We see no reason not to indulge that presumption with regard
to the information Edwards conveyed to Taylor. The record reveals she told Taylor that
she "caught her husband with her daughter," and she "believed they were having sex." 
According to Taylor, when he talked to Edwards on the telephone about 20 minutes after
the offense, she seemed "[s]omewhat upset, but rattled. Confused." We, therefore, find
that Taylor was justified in believing that Edwards was a credible person, within the
meaning of article 14.04, and that Taylor had satisfactory proof that a felony was
committed. (6) In short, Taylor possessed probable cause to order appellant's arrest. 

 We next decide whether there was satisfactory proof that appellant was about to
escape. The relevant question under article 14.04 is whether the information available to
the officer ordering the arrest would justify the belief that appellant would take flight if not
placed in custody, so that there is no time to procure a warrant. Tribble, 792 S.W.2d at
284 (citing West v. State, 720 S.W.2d 511, 517 (Tex.Cr.App. 1986), cert. denied, 481
U.S.1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987)). Article 14.04 does not require proof
that the suspect was, in fact, about to escape or that there was, in fact, no time to procure
a warrant. Crane v. State, 786 S.W.2d 338, 347 (Tex.Cr.App. 1990). In determining
whether an officer could reasonably have believed that a suspect would take flight, it is
important to keep in mind the temporal proximity of the actions of the suspect, both to the
commission of the crime, and to the suspect's discovery of the police investigation of him. 
Allridge v. State, 850 S.W.2d 471, 491 (Tex.Cr.App. 1991), cert. denied, 510 U.S. 831, 114
S.Ct.101, 126 L.Ed.2d 68 (1993). 

 Here, less than an hour elapsed between the time of Edwards's discovery of the
offense and the time of appellant's arrest. Next, appellant became aware that he was
under suspicion for sexual abuse of a child when Edwards interrupted him while he was
engaged in a sex act with her ten year old daughter. It is clear appellant knew of
Edwards's suspicions because when she queried "how long this had been going on,"
appellant responded, "[n]ot very long." Furthermore, appellant apologized to her on two
separate occasions before Edwards departed for her parents' house. Once officers
approached appellant at his home, he was on notice that a complaint had been made to
law enforcement officials. Tribble, 792 S.W.2d at 284. Finally, Edwards informed Taylor
that when she left home appellant was packing all of his belongings into his vehicle,
preparing to depart for a destination unknown to her. Upon hearing that information, Taylor
became concerned that appellant would leave the jurisdiction. Appellant was highly mobile
at that point and could have easily escaped detection had police not intervened. (7) Hughes
v. State, 24 S.W.3d 833, 839 (Tex.Cr.App. 2000); see Salazar, 688 S.W.2d at 663. 
Considering the totality of the circumstances, we find that the information available to
Taylor justified his belief that appellant would escape if not placed in custody. 

 Under the federal constitution, officers can arrest without a warrant as long as they
have probable cause. U.S. v. Watson, 423 U.S. 411, 423, 96 S.Ct. 820, 828, 46 L.Ed.2d
598, 609 (1976). Courts in Texas are in agreement that the current interpretation of article
one, section 9 of the state constitution is consistent with the interpretation of the Fourth
Amendment. (8) Aitch v. State, 879 S.W.2d 167, 171 (Tex.App.-Houston [14th Dist.] 1994,
pet. denied). Therefore, because we have found probable cause existed to authorize
appellant's warrantless arrest, his objection to the admission of physical evidence and
incriminating statements under both federal and state constitutions must fail. As for
appellant's statutory challenge, we find that the warrantless arrest was legitimately made
under article 14.04. Because the evidence was lawfully obtained, the trial court did not err
in failing to exclude it under article 38.23. (Vernon Supp. 2004). Finally, having
determined that the challenged evidence was properly obtained, appellant cannot be heard
to complain that he was harmed by its admission. Resultantly, appellant's five issues are
overruled.

 Accordingly, the judgments of the trial court are affirmed.


 Don H. Reavis

 Justice


Do not publish. 


1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). 
2. The record does not reflect whether appellant was prosecuted for engaging in
inappropriate behavior with C.C.
3. All references to articles are to the Texas Code of Criminal Procedure, unless
otherwise designated. (Vernon 1997). 
4. Article 38.23, the Texas "exclusionary rule," provides: "No evidence obtained by an
officer or other person in violation of any provisions of the Constitution or laws of the State
of Texas, or of the Constitution or laws of the United States of America, shall be admitted
in evidence against the accused on the trial of any criminal case." 
5. The record does not reveal what information, if any, the officers shared with
appellant before they took him into custody. 
6. Aggravated sexual assault and indecency with a child are felony offenses. See
Tex. Pen. Code Ann. § 21.11(d) (Vernon 2003) and § 22.021(e) (Vernon Supp. 2004).
7. In reaching this conclusion, we are not unsympathetic to appellant's assertion that 
proof that the suspect is merely moving from place to place is insufficient. Busby v. State,
990 S.W. 2d 263, 270 (Tex.Cr.App. 1986), cert. denied, 528 U.S. 1081, 120 S.Ct. 803, 145
L.Ed.2d 676 (2000). However, we are bound to consider only that evidence available to
Taylor when he made the decision to order appellant's arrest. See id. At that time, Taylor
was aware only that appellant was at his and Edwards's home, packing his belongings into
the car, preparing to depart to an unknown destination. Taylor was unaware that appellant
owned another home in town; therefore, we do not believe the evidence available to Taylor
indicated appellant's plan was merely to move from his and Edwards's home to another
house in town. 
8. The Fourth Amendment to the United States Constitution provides: "The right of the
people to be secure in their persons, houses, papers, and effects, against unreasonable
search and seizure, shall not be violated . . . ." Similarly, the Texas Constitution provides,
in pertinent part: "The people shall be secure in their persons, houses, papers, and
possessions, from all unreasonable searches and seizures . . . ." Tex. Const. art. I, § 9.